## HUME v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. November 18, 1902.)

No. 1,109.

1. APPEAL—WRIT OF ERROR—SCOPE OF REVIEW.
   In cases coming to the circuit court of appeals on writ of error, only questions of law are to be examined.

2. POST OFFICE—FRAUDULENT USE OF MAILS—INDICTMENT.
   Rev. St. U. S. § 5480 [U. S. Comp. St. 1901, p. 3696], makes it an offense for any person to place any letter in a post office in furtherance of any scheme to defraud. An indictment under the statute charged that S., acting for himself and "in conjunction with H.," placed a letter, etc. *Held,* that a contention that the indictment did not charge H. with any participation was of no merit.

3. SAME—SETTING OUT LETTERS.
   An indictment under the statute, charging a scheme to defraud, and the mailing of letters in furtherance thereof, is sufficient, though the letters are not set out.

4. SAME—ALLEGATION AS TO MAILING.
   An indictment under the statute alleged the deposit of certain letters in a post office. Such allegation was not followed by any averment that the letters were deposited to be sent, but, after a further allegation as to the deposit of other letters, it was averred, "all of which said above-mentioned letters" were so deposited for the purpose of being carried and delivered through the mail. *Held,* that the words "all of which said above-mentioned letters" included all of the letters which had been previously mentioned in the indictment.

5. SAME—DATE OF OFFENSE—ALLEGATIONS.
   An indictment under the statute alleged that defendants on the 30th of September, 1896, having "theretofore fraudulently devised" a scheme to defraud, and then averred the scheme and the deposit of letters, and gave the dates of deposit as prior to September 30, 1896. Defendant contended that the indictment was insufficient, in that it showed the letters were mailed prior to the fraudulent scheme. *Held* of no merit, since the indictment did not charge anything done on September 30th, but that the scheme was formed theretofore.

6. SAME—ALLEGATIONS OF TIME—EFFECT.
   The date of an alleged offense as stated in an indictment is not binding on the United States, and is only material in reference to the bar of limitation, and to show that the offense was committed anterior to the presentment of the indictment.

7. SAME—DEFECT OF FORM.
   Rev. St. U. S. § 1025 [U. S. Comp. St. 1901, p. 720], provides that no indictment shall be deemed insufficient by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant. *Held,* that an indictment is not to be deemed insufficient, though not entirely grammatical, where it contains a substantial accusation of crime, and its averments furnish the accused with such a description of the charge against him as would enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause.

8. SAME—PRINCIPALS IN OFFENSE.
   Rev. St. U. S. § 5480 [U. S. Comp. St. 1901, p. 3696], makes it an offense for any person to place any letter in a post office in furtherance of any scheme to defraud. *Held,* that if the offense, under the statute, be a

---

¶ 2. Use of mails in furtherance of fraud or counterfeiting, see note to Timmons v. U. S., 30 C. C. A. 86.

¶ 6. See Indictment and Information, vol. 27, Cent. Dig. § 548.

118 F.—44

felony, so as to render the doctrine of principal and accessory applicable, one who performs a part of the scheme, or who is a party to the scheme or plan, is a principal, though he is not present when the letters are mailed.

Pardee, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of Texas.

Omitting the caption and indorsements, the indictment is as follows:

"The grand jurors of the United States, within and for the district aforesaid, at Dallas, in said district, duly selected, impaneled, sworn, and charged to inquire into, and true presentment make of, all crimes and offenses cognizable under the authority of the United States, committed within said Northern district of Texas, upon their oaths present in open court that on September 30th, 1896, in Limestone county, Texas, in the Northern district of Texas, and within the jurisdiction of this court, L. J. Guynes, D. J. Taylor, A. Effron, Jake Effron, W. J. Hume, George E. Tirney, and H. D. Markham, having theretofore unlawfully, knowingly, and fraudulently devised a scheme and artifice to defraud Reinhard Strauss and Wilhelm Holoch and C. F. Meith, and various other persons whose names are to the grand jurors aforesaid unknown, which said scheme and artifice to defraud was to be carried on and affected by the use and means of the post-office establishment of the United States of America, and which said use and misuse of the post-office establishment of the United States was then and there a part of said scheme to defraud, and which said scheme and artifice to defraud was to be effected as aforesaid by opening communication as aforesaid by and through the post-office establishment of the United States, and by inciting said Reinhard Strauss and Wilhelm Holoch and C. F. Meith, and various other persons unknown to the grand jury, to open communication with them through said post-office establishment, and which said scheme and artifice to defraud as aforesaid was to be carried out by the said L. J. Guynes, A. Effron, D. J. Taylor, Jake Effron, W. J. Hume, George E. Tirney, and H. D. Markham, doing and pretending to be doing business and buying and selling cotton under their names individually, and which said scheme to defraud, to be effected, aforesaid, consisted in, and was, in substance, as follows, to wit: The said L. J. Guynes, A. Effron, Jake Effron, D. J. Taylor, and H. D. Markham were to pretend to be in a legitimate business of buying and selling cotton, and shipping the same to foreign countries, at and from Mexia, Limestone county, Texas, and from New Orleans, Louisiana; that they were to contract and engage with Reinhard Strauss, Wilhelm Holoch, and C. F. Meith, and other persons to the grand jurors unknown, to purchase from them, or sell on commission for them, such cotton as might be shipped by the said L. J. Guynes, A. Effron, Jake Effron, D. J. Taylor, and H. D. Markham, to the said Reinhard Strauss, Wilhelm Holoch, and C. F. Meith, and that said Reinhard Strauss and Wilhelm Holoch and C. F. Meith were to pay drafts drawn on them and their bankers, or either of them, or the bankers of either of them, or the banker of either of them, for such amounts as might be indicated in said draft or drafts drawn against cotton so to be shipped by said L. J. Guynes, A. Effron, Jake Effron, D. J. Taylor, and H. D. Markham, from Mexia, Texas, or New Orleans, Louisiana, with bills of lading attached; the said draft or drafts so drawn to properly be for the amount that such shipment of cotton was to bring, according to the quality and price of said cotton; that, when said agreement and arrangement should be made between the parties named, that they, L. J. Guynes, A. Effron, Jake Effron, D. J. Taylor, and H. D. Markham, should buy from the said George E. Tirney and W. J. Hume cotton of a very inferior and cheap grade, commonly known as 'linters,' and the said George E. Tirney and William J. Hume, under the name of Tirney, Hume & Co., were to furnish said linters for the purpose of shipping same to the said Reinhard Strauss and Wilhelm Holoch and C. F. Meith, and to the other persons unknown to the grand jury, and, when so shipped, bills of lading were to be made out, and drafts drawn against said linters, indicating cotton of a higher and better grade

and price than the said linters, and the drafts being drawn for amounts indicating such shipments of said linters to be a grade of cotton much higher and better than said linters, and which said drafts were to be guarantied·and cashed by the aforesaid Reinhard Strauss and Wilhelm Holoch and C. F. Meith, and other persons to the grand jurors unknown; said Reinhard Strauss and Wilhelm Holoch and C. F. Meith, and other persons to the grand jurors unknown, believing that such drafts and bills of lading were true, and were in fact for cotton of a higher and better grade than linters, and the said Reinhard Strauss and Wilhelm Holoch and C. F. Meith, and other persons to the grand jurors unknown, thus actually paying for cotton of a higher and better grade than linters, and of a higher and better price than linters, when, in fact and truth, only cotton of a very inferior grade and lower price, commonly known as 'linters,' were actually and in reality shipped, and thus drawn against, as above stated, thus defrauding and with the intent to defraud the said Reinhard Strauss and Wilhelm Holoch and C. F. Meith, and other persons to the grand jurors unknown, of the difference between the price and value of the higher and better grade of cotton and higher and better-priced cotton so indicated by said drafts drawn and bills of lading attached, and the low grade of cotton commonly known as 'linters,' which was actually shipped; and in furtherance of said artifice and scheme to defraud, to be so effected as above alleged, the said L. J. Guynes, acting for himself, and in conjunction with the said A. Effron, Jake Effron, D. J. Taylor, H. D. Markham, George E. Tirney, and William J. Hume, as aforesaid, in pursuance of such schemes and artifice to defraud, did on April 6th, 1896, wrongfully and unlawfully deposit in a certain post office of the United States, to wit, the post office at Mexia, Limestone county, Texas, in the Northern district of Texas, a certain letter addressed to Mr. William Holoch, Chemnitz, Germany, which letter was in words and figures and letters as follows, to wit:

" 'L. J. Guynes, Cotton Buyer.

" 'Mexia, Texas, April 6th, 1896.

" 'Mr. Wilhelm Holoch, Chemnitz—Dear Sir: I should like to introduce my shipments of cotton in your markets, and take the liberty of addressing you on this subject. I have never done any export business direct, but am, nevertheless, thoroughly familiar with it, and feel hopeful that after a few trial shipments I shall work up a good business. For any information concerning me, I beg to refer you to my bankers, Messrs. Prendergast, Smith & Co., of this place, who have known me all my life. Should you desire it, however, I would be willing to secure you with ample margin against claims until you acquaint yourselves, through mutual transactions, with my abilities and manner of business. I ask for no large business at once,—as mentioned before, to work up a good trade is my aim. Our cottons are sightly, and of good staple, and, no doubt, will please you. Awaiting your early reply and pleasure in the premises, I beg to remain,

" 'Yours very truly,                L. J. Guynes.'

"And the said L. J. Guynes, acting as aforesaid in pursuance of such scheme and artifice to defraud as aforesaid, did, acting for himself and in conjunction with A. Effron, Jake Effron, D. J. Taylor, H. D. Markham, George E. Tirney, and William J. Hume, on June 26, 1896, wrongfully and unlawfully deposit in a certain post office of the United States, to wit, the post office at Mexia, Limestone county, Texas, in the said Northern district of Texas, a certain letter addressed to C. F. Meith, Leipzig, Germany, which said letter was in words and figures and letters as follows, to-wit:

" 'L. J. Guynes, Cotton Buyer.

" 'Mexia, Texas, June 26th, 1901.

" 'Mr. C. F. Meith, Leipzig—Dear Sir: Your esteemed favor of the 6th reached me in due course, and have given contents my careful attention. Acting on your kind suggestion, I tried to arrange with Messrs. Prendergast, Smith & Co. to guaranty the out-turn of my shipments to you, but regret my efforts were in vain. They assure me that it is contrary to their rules,

and that, while they feel they would be safe in guarantying my shipments, yet they don't care to make such a precedent, and hence I see no other way of securing you than proposed in my last letter; i. e., either I will deduct from each invoice, or remit in a bank draft, $3.00 or $4.00 per bale, which shall remain in your hands until shipments are approved, when you will refund same to me. As stated in my last letter, I have not lost sight of the fact that I am entirely unknown in your market, and it is precisely for that reason that I am offering security which I consider equally as good as a bank guaranty. I now beg to confirm that all offers and sales shall be based upon the Bremen classification and arbitration; also that all offers shall be in force for twenty-four hours and understood even running grades, good color, and staple. When a staple of 28 m/m and 28/30 m/m can be guarantied, it shall be mentioned in the cables. Shipments by direct steamers to Hamburg and Bremen, buyer's option against port; bills of lading from Galveston or New Orleans, my option. Prices in pence cif and 6 per cent., if the buyers wish to insure you are authorized to sell at 1/32d. less. Insurance, if covered by me, to be with a good company, and to include 10 per cent. imaginary profit, country damage and until warehoused in Europe. Reimbursement at 90 d./s. on English or German bankers, if the latter in M20.40 per £1; Shepperdson's Code 1881 to be used in cabling, and I await your private code and the list of spinners and bankers. I understand that your commission is 1½ per cent. of the net amount of the invoice. Please advise if I am to remit same with each invoice or monthly. As to your inquiry concerning Lewis Bros., of Ennis, I beg to state that they had a business here, but they failed some time during last fall. I understand that the senior of that firm died about two months ago, and the other still resides in Ennis. If I can, in any way, serve you, please command me. Crop prospects are very good, though rain will soon be needed. Awaiting your further favors, and hoping to do a profitable business together, I remain,

    " 'Yours very truly,                                    L. J. Guynes.
" 'My cable address is 'Guynes.'
" 'P. S. Will advise you in due time the name of my controller of weight and sampling at Bremen and Hamburg.'

"And the same L. J. Guynes, A. Effron, Jake Effron, D. H. Taylor, H. D. Markham, George E. Tirney, and William J. Hume did thereafter, in Limestone county, Texas, and at the post office of the United States in said city of Mexia, deposit and cause to be deposited in the said post office, at other dates too numerous for the grand jurors to here mention and set out, a large number of other letters, drafts, bills of lading, circulars, and other documents, all of which are too numerous, lengthy, and unfit to be inserted in this instrument, and too voluminous to be herein copied, and the said L. J. Guynes, A. Effron, Jake Effron, D. J. Taylor, H. D. Markham, George E. Tirney, and William J. Hume, acting as aforesaid, in pursuance of said scheme and artifice to defraud, to be so effected and carried out by means of the post-office establishment of the United States, did, at other places and other post offices of the United States, to the grand jurors unknown, deposit various other circulars, letters, drafts, and bills of lading, directed to said Reinhard Strauss and Wilhelm Holoch and C. F. Meith, and other persons to the grand jurors unknown, all of which said above-mentioned letters, drafts and bills of lading so deposited in the post office of the United States were so deposited for the purpose of being carried and delivered through the mail to the said Reinhard Strauss and Wilhelm Holoch and C. F. Meith, and other persons to the grand jurors unknown; and the said L. J. Guynes, A. Effron, Jake Effron, D. J. Taylor, H. D. Markham, George E. Tirney, and William J. Hume did, in pursuance of and in accordance with said scheme and artifice to defraud, so carried on as above alleged, actually defraud and swindle of a large amount of money, to wit, the sum of fifty thousand dollars, Reinhard Strauss and Wilhelm Holoch and C. F. Meith, the particular amount of which each was defrauded and swindled by the said L. J. Guynes, A. Effron, Jake Effron, D. J. Taylor, H. D. Markham, George E. Tirney, and William J. Hume is to the grand jurors unknown; all of which aforesaid scheme and artifice to defraud was with the intent on the part of said L. J. Guynes, A. Effron, Jake Effron, D. J. Taylor, H.

D. Markham, George E. Tirney, and William J. Hume to defraud the said Reinhard Strauss and Wilhelm Holoch and C. F. Meith, and other persons to the grand jurors unknown, and such scheme and artifice to defraud to be so carried on as above alleged was in fact and reality actually carried out by the aforesaid means to the extent that said Reinhard Strauss and Wilhelm Holoch and C. F. Meith were defrauded and swindled of a large amount of money, to wit, the sum of fifty thousand dollars, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

The defendants L. J. Guynes and William J. Hume were arraigned and pleaded "Not guilty." The jury found them both "guilty as charged in the indictment." Judgment was entered on the verdict, a motion in arrest of judgment being overruled, and each of the two defendants were sentenced to pay a fine of $500 and costs, and each to imprisonment for one year and one day at hard labor.

Exceptions were reserved to a part of the charge of the court. The plaintiff in error, W. J. Hume, sued out this writ of error, and filed in the court below an assignment of errors as follows: "(1) The court erred in instructing the jury, as set forth in bill of exceptions, that if the jury found from the evidence that the defendants mailed the letters and unmailable matter as charged in the indictment at the United States post office at Mexia, Texas, then they would find the defendants guilty, because the evidence failed to show that the defendant Hume was present and participated in the act charged in the indictment, and in law was not liable for the acts of his codefendants in improperly using the United States mails, as charged in the indictment, in that the defendant Hume was not present or participated in the mailing of the said letters, and there was no charge of conspiracy in the indictment. (2) The court erred in overruling the motion in arrest of judgment upon the part of defendant W. J. Hume, because said indictment failed to allege that said defendant Hume did unlawfully and wrongfully deposit in the post office of the United States at Mexia, Texas, two certain letters set out in said indictment, and because said indictment failed to describe any letter, draft, or bill of lading, or other document, alleged to have been placed in the mail by said Hume, and because said indictment set forth and charged the defendant Hume with the commission and offense of placing in the United States post offices certain packets and letters, and packets in other places other than the Northern district of Texas, and beyond the jurisdiction of this court, a quo, and for other reasons set forth in said motion in arrest of judgment." In the brief filed here, an additional assignment of errors is made, as follows: "(3) That said indictment fails to charge the plaintiff in error with any offense under said statute. (4) That said court erred in charging the jury as follows: 'The testimony shows the residence of the defendant W. J. Hume to have been in New Orleans. He was not present at Mexia at the time the letters in evidence were deposited in the post office of the United States at that point. However, if he was a party to the scheme or artifice to defraud, at the time of its inception, if such there was, he would be as guilty as one who, with guilty knowledge of the scheme or artifice to defraud, might have placed with his own hands letters in the post office of the United States in furtherance thereof. If he was ignorant of the scheme or artifice to defraud, and had no part in devising or assisting in it at the time of its inception, and you should so find, it would be your duty to acquit him.' (5) That said court erred in refusing to instruct the jury 'that the evidence failed to show that the defendant Hume was present or participated in the act charged in the indictment against his co-defendants, and, in the law, was not liable for the acts of his co-defendants in improperly using the United States mails as charged in the indictment."

J. D. Rouse and William Grant, for plaintiff in error.
William H. Atwell, U. S. Atty.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

In this, as in every case coming to this court on writ of error, we are only to examine questions of law. The evidence is not brought here to be reviewed. We must assume, therefore, that the evidence was sufficient to substantiate the charges in the indictment that the plaintiff in error, with others, fraudulently devised the scheme to defraud, and that this scheme was to be carried on and effected by the use and means of the post-office establishment of the United States, and that the scheme was carried out with the intention and purposes as charged. So far, therefore, as the moral element is concerned, it must be taken in this court that the guilt of the plaintiff in error was established. The record and assignment of errors raise three questions to be decided: (1) Is the indictment fatally defective because it fails to charge W. J. Hume with the commission of any offense? (2) Is the indictment fatally defective because the dates therein stated are repugnant and contradictory? (3) Did the court err in instructing the jury as stated in the bill of exceptions? If any one of these questions is answered in the affirmative, it would be our duty to reverse the judgment; but if they are all properly answered in the negative, and the trial court has not erred, it is equally our duty to affirm the judgment.

1. Section 5480 of the United States Revised Statutes, as amended by the act of March 2, 1889 (25 Stat. 873 [U. S. Comp. St. 1901, p. 3696]), so far as it is applicable to this case, is as follows:

"If any person, having devised or intended to devise any scheme or artifice to defraud * * * to be effected by either opening or intending to open correspondence or communication with any person, whether resident within or outside the United States, by means of the postoffice establishment of the United States, or by inciting such other person or any person to open communication with the person so devising or intending, shall, in and for executing such scheme or artifice, or attempting so to do, place or caused to be placed any letter * * * in any postoffice * * * of the United States, to be sent or delivered by the said postoffice establishment, * * * such person so misusing the postoffice establishment shall, upon conviction, be punishable by a fine of not more than $500 and by imprisonment for not more than 18 months, or by both," etc.

The indictment is found under this statute. The scheme to defraud is well averred, and then it is alleged that L. J. Guynes, acting for himself, and in conjunction with A. Effron and others, including the plaintiff in error, in pursuance of such scheme and artifice to defraud, did on April 6, 1896, wrongfully and unlawfully deposit in a certain post office of the United States, to wit, the post office at Mexia, Limestone county, Tex., in the Northern district of Texas, a certain letter, the address and contents of which are given. A like charge is made as to another letter deposited in the same post office on June 26, 1896. It is contended that as the indictment charges that L. J. Guynes, in depositing the letters, was "acting for himself," it charges no offense against Hume. The indictment, of course, must be construed as a whole. It had already been alleged that Hume participated in the scheme or artifice to defraud, and that the depositing of the letters was in pursuance of this scheme. And the in-

dictment goes further than to say that Guynes was acting for himself. It adds, "and in conjunction with A. Effron and * * * W. J. Hume." It is urged by counsel that it is "difficult to determine" just what is meant. But we must take it that the word "conjunction" was used with its ordinary meaning,—"the state of being conjoined, united, or associated"; "union, association, league." Webst. Dict. Placing that meaning on the word, it seems clear that the grand jury charged that Guynes, in posting the letters, was acting for himself, in union with the other defendants who concocted the scheme to defraud. But had we concluded otherwise, by another paragraph in the indictment the defect would have been obviated, for it is charged that the defendants, including W. J. Hume, "did deposit and cause to be deposited" in the same post office, in pursuance of the same scheme and artifice to defraud, a large number of other letters, drafts, bills of lading, circulars, and other documents, which are not copied or described. While it would have been better pleading to have given the contents of these letters, also, the omission does not constitute a fatal defect. Durland v. U. S., 161 U. S. 306, 315, 16 Sup. Ct. 508, 40 L. Ed. 709. A conviction could be properly predicated on this charge as to letters not embodied, which of itself makes the indictment good, so far as this point is concerned. It is also claimed that the indictment is fatally defective because it does not aver that the letters were "so deposited to be sent or delivered by the said post-office establishment." It is true that neither this averment nor its equivalent immediately follows the allegation of the posting of the letters that are set out in the indictment; but after averring the depositing of other drafts, letters, bills of lading, etc., we find the words "all of which said above-mentioned letters, drafts and bills of lading so deposited in the post office of the United States were so deposited for the purpose of being carried and delivered through the mail." This averment is not overlooked by the distinguished counsel for the plaintiff in error, but it is contended that "the grammar requires it to be restricted to the letters enumerated in the same sentence." We think the words "all of which said above-mentioned letters" were intended to include and do include all of the letters which had been previously mentioned in the indictment. But if it be conceded that punctuation and grammatical construction would confine the reference to the letters last above mentioned, it must be held that an indictment may be ungrammatical, and yet good as matter of law.

2. It is contended that the indictment charges that the scheme or artifice to defraud was devised September 30, 1896, and that it also avers that the letters which are set out were deposited, respectively, on April 6, 1896, and June 26, 1896, and that their deposit, therefore, could not have been in furtherance of the scheme devised in the following September. The contention is that the dates as given in the indictment cause a repugnancy that is fatal to it; that the deposit of the letters could not have been pursuant to a scheme to defraud which was concocted after the letters were posted. This contention, we think, is not sustained by the language of the indictment. It charges that on the 30th day of September, 1896, L. J. Guynes and others, including W. J. Hume, "having theretofore un-

lawfully, knowingly, and fraudulently devised a scheme and artifice to defraud," etc. Then the indictment proceeds to describe the scheme, and aver the posting of the letters, and in alleging the depositing of the letters the other dates are given. It will be observed that it is not averred that anything was done on the 30th day of September, 1896. That date is given, followed by the expression that the defendants named in the indictment "theretofore unlawfully, knowingly," etc. The charge, therefore, is that the things averred were done before the 30th day of September, "theretofore" meaning "before then." It was probable the pleader, in inserting this first date at the place where, in the forms of indictment which are usual in the federal courts, dates are inserted, intended at first to allege it as the date of the posting of the letters, and then to make the averment that theretofore, or before the time the letters were posted, the scheme to defraud was formed. But later, when the posting of the letters is described, the actual dates are given on which they were posted. The indictment certainly does not aver that the scheme was concocted on the 30th day of September, 1896. If that date can be made to relate to the formation of the scheme, it is followed by an averment that it was theretofore devised; that is, devised before that date. However this may be, it is a well-settled rule of criminal practice that the date of an alleged offense, as stated in an indictment, is not binding on the United States, and is only material in reference to the bar of limitation, and to show that the offense was committed anterior to the presentment of the indictment. It is the practice to name in the indictment a date on which the offense was committed, "but, in the absence of a special reason rendering it important, this allegation is mere form, and the time proved need not be the same as laid." 1 Bish. New Cr. Proc. § 386. The supreme court has recently said that the "date named in an indictment for the commission of the crime of murder is not an essential averment. Proof that the crime was committed days before or days after the date named is no variance." Hardy v. U. S. (Oct. term, 1901) 22 Sup. Ct. 889. As the averment of time need not be proved as laid, it is clearly matter of form. U. S. v. Jackson (C. C.) 2 Fed. 502; Crass v. State, 30 Tex. App. 480, 17 S. W. 1096. It appears from the record that the indictment in this case was filed in court on January 13, 1899. Whether it be construed as averring that the offense was committed in September or in April of 1896 is immaterial. Both dates were before the finding of the indictment. The government would be permitted to prove that the offense was committed on any day within the statute of limitations prior to that on which the indictment is found. It is true that the indictment is subject to criticism. It is not entirely grammatical, and its statements are not clear and orderly. It could be abbreviated and made clearer. But its defects are all matter of form. It contains a substantial accusation of crime, and its averments furnish the accused with such a description of the charge against him as would enable him to make his defense, and avail himself of his conviction or acquittal for protection against further prosecution for the same cause. From it the court can determine that the facts alleged are such that they are sufficient in law to sup-

port a conviction. We find no defect in it that would tend to prejudice the defendant. By the words of the statute, no indictment shall be deemed "insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." Rev. St. U. S. § 1025 [U. S. Comp. St. 1901, p. 720]. The court should see to it that the whole proceeding is such as to do justice to the defendant; that the charge against him is sufficient, and his trial fair. But no one should be permitted to escape the just penalties of the law upon nice questions of parsing or grammatical construction, or upon questions involving "matter of form, only, that do not prejudice the defendant."

3. On the following excerpts from the bill of exceptions two of the assignments of error are based:

"After the United States of America had introduced evidence tending to prove that the defendants Effron and Guynes had deposited nonmailable matter in the United States post office at Mexia, Texas, at or about the time laid in the indictment, and that the defendant Hume had never been at the town of Mexia, Texas, and had not with his own hands deposited any such nonmailable matter in the United States post office at said place, but that the evidence tended to show that the defendant Hume, at and during the mailing of said nonmailable letters and mail matter by his codefendants at Mexia, Texas, was in the city of New Orleans, where he resided, and was not present at the time of mailing of said nonmailable matter at Mexia, * * * the court, of its own motion, and in its general charge, instructed the jury upon the law, as it related to the defendant W. J. Hume, as follows: 'The testimony shows the residence of the defendant W. J. Hume to have been in New Orleans. He was not present at Mexia at the time the letters in evidence were deposited in the post office of the United States at that point. However, if he was a party to the scheme or artifice to defraud at the time of its inception, if such there was, he would be as guilty as one who, with guilty knowledge of the scheme or artifice to defraud, might have placed with his own hands letters in the post office of the United States in furtherance thereof. If he was ignorant of the scheme or artifice to defraud, and had no part in devising or assisting in it at the time of its inception, and you should so find, it would be your duty to acquit him.' Whereupon, before the retirement of the jury, the defendant Hume, by counsel, excepted to the charge of the court as stated above, on the ground that the evidence failed to show that the defendant Hume was present and participated in the act charged in the indictment against his codefendants, and, in the law, was not liable for the acts of his codefendants in improperly using the United States mails as charged in the indictment; and the defendant Hume, by counsel, moved the court to instruct the jury to that effect, which the court refused to do."

The objection to this instruction, and the request by which it is followed, are based on the theory that the defendant Hume could not be convicted as a principal in the offense charged; he being absent and in Louisiana when the letters were posted in Texas. The contention must have been that Hume, if connected with the crime, could not be a principal, but would be an accessory before the fact. This contention, we think, cannot prevail. If the offense charged in the indictment is a misdemeanor, all who aid and abet or participate in its commission are principals, and are to be indicted and prosecuted as such; the doctrine of principal and accessory being applicable only to felonies. U. S. v. Gooding, 12 Wheat. 475, 6 L. Ed. 693; U. S. v. Mills, 7 Pet. 137, 8 L. Ed. 636; 1 Bish. New Cr. Law,

§ 656. A crime may be "infamous," within the meaning of the fifth amendment of the constitution, and yet not be a felony. Ex parte Wilson, 114 U. S. 417, 5 Sup. Ct. 935, 29 L. Ed. 89. There is no general definition in the federal statutes separating and defining felonies and misdemeanors. When a statute, therefore, creates an offense, and does not define it to be either a felony or a misdemeanor, we must look at the common law to determine which it is; and, although the old tests are obsolete, an offense is held to be a felony which was such when those tests were operative. But usually where a statute creates a noncapital offense, not declaring it to be a felony, it will be deemed a misdemeanor. 1 Bish. New Cr. Law, § 616. In the absence of a legislative determination of the grade of the offense by the statute creating it, and of a general statute defining felonies, it has been said by the supreme court "that the word is used to designate such serious offenses as were formerly punishable by death, or by forfeiture of the lands or goods of the offender." Bannon v. U. S., 156 U. S. 464, 15 Sup. Ct. 467, 39 L. Ed. 494; 1 Bish. New Cr. Law, §§ 615, 616. But if the offense were a felony to which the doctrine of principal and accessory was applicable, the result, we think, would be the same. As all the evidence has not been preserved, we must assume that it was proved that the plaintiff in error, with others named, did devise the scheme and artifice described in the indictment in which Hume was to perform, and did perform, a certain part,—that is, to furnish linters for the purpose of shipping the same, —and, when so shipped, bills of lading were to be made out, and drafts drawn against the linters, indicating cotton of a higher and better grade, and that by this means the scheme was to be carried, and was carried, into effect. Durland v. U. S., 161 U. S. 306, 312, 16 Sup. Ct. 508, 40 L. Ed. 709. Now, assuming, as we must, that it had been proved that Hume performed his part as alleged in carrying out this scheme, it was not necessary, to make him a principal in the crime,—assuming it to be a felony,—that he should have been present in the Northern district of Texas when Guynes posted the letters, for, "where several acts constitute together one crime, if each is separately performed by a different individual in the absence of the rest, all are principals as to the whole." 1 Bish. New Cr. Law, § 650. Again, there is nothing in the bill of exceptions to show that it was not proved, as charged, that W. J. Hume caused the letters to be deposited in the post office pursuant to the scheme to defraud, or that they were not deposited by Guynes, in conjunction or association with Hume, pursuant to the fraudulent scheme. The objection is based solely on the unsound theory that Hume's personal presence at the time the letters were posted was necessary, to make him guilty. If he caused the letters to be deposited, or if they were posted pursuant to a scheme to which he was a party, he is properly convicted, although he was not present when the letters were posted.

The record not disclosing any error, the judgment of the district court must be affirmed.

PARDEE, Circuit Judge, dissents.