## GOLDBERG v. UNITED STATES (two cases).*

### CLUCK v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. February 5, 1924.)

Nos. 1663–1665.

1. **Criminal law ⬤⟲1159(4)—Substantial error only warrants reversal.**
   Under Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), only a very plain and substantial error of law can warrant the reversing of a verdict rendered under instructions to which no exception was taken, the correctness of which depends largely on the credibility of the witnesses.

2. **Indictment and information ⬤⟲176—Need not be proved on exact date alleged.**
   In a prosecution for conspiracy, the government is not held to proof of the exact date alleged.

---

⬤⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied February 20, 1924.

**3. Conspiracy ⊕⇒45—Evidence of conditions preceding alleged conspiracy held competent.**

Under an indictment for conspiracy of bankrupts to conceal assets from their trustee, evidence of conditions existing prior to the alleged conspiracy *held* competent.

**4. Witnesses ⊕⇒287(1)—Evidence held competent on redirect examination.**

On *redirect examination* of a government *witness*, it is proper to permit questions tending to clarify or modify statements brought out on cross-examination.

**5. Criminal law ⊕⇒811(1)—Requested instructions properly refused.**

The court is not required to give requested instructions as to the significance of particular parts of the evidence.

In Error from the District Court of the United States for the District of Massachusetts; George F. Morris, Judge.

Criminal prosecution by the United States, against Henry Goldberg, Louis Goldberg, and Louis Cluck. Judgment of conviction, and defendants bring error. Affirmed.

James F. Cavanagh and Leon R. Eyges, both of Boston, Mass., for plaintiffs in error.

Essex S. Abbott, Sp. Asst. U. S. Atty., of Boston, Mass. (Robert O. Harris, U. S. Atty., and Joseph V. Carroll, Sp. Asst. U. S. Atty., both of Boston, Mass., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The plaintiffs in error, herein called defendants, were convicted of conspiracy to conceal assets from the trustees in bankruptcy of the United Jewelry Company (which was indicted with them), a corporation in which the defendants were the sole stockholders and officers. The corporation was organized in 1919, and did business until July, 1921, when, on an involuntary petition filed July 16, it was adjudicated bankrupt. One Kantor was appointed receiver on July 29, and appointed and qualified as trustee on September 7, 1921. Shortly after, the business was sold out. Later the Goldbergs went into the jewelry business and Cluck into the dry goods business.

[1] The gist of this case is that the personal defendants conspired to have their corporation buy on credit a large quantity of jewelry; that then, through a fake robbery, most of it should disappear—thus concealing it from the trustee appointed in the resultant, contemplated bankruptcy. The evidence, while circumstantial, was highly persuasive. The defendants themselves took the witness stand. The jury obviously declined to believe their testimony. No exceptions were taken to the charge to the jury. The exceptions relate merely to minor rulings as to admitting and excluding evidence, and to the court's refusal to give certain requested instructions. Only a very plain and substantial error of law would warrant upsetting a verdict so based. 40 Stat. 1181 (Comp. St. Ann. Supp. 1919, § 1246; Camp v. Gress, 250 U. S. 308, 39 Sup. Ct. 478, 63 L. Ed. 997; Horning v. District of Columbia, 254 U. S. 135, 41 Sup. Ct. 53, 65 L. Ed. 185; Garcia v. Hernandez (C. C. A.) 270 Fed. 455.

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

We find no error.

The questions before us require but brief and meager outline of the pretty elaborate circumstantial evidence. There was little direct conflict in the evidence. The questions were as to the truth of the testimony and as to the inferences to be drawn from the testimony, so far as found true, and from findings, if any, that the testimony of the defendants, was false.

On evidence, practically undisputed, it appeared that in the six months prior to the alleged robbery, which was on July 12, 1921, the defendants had, through purchases of jewelry, incurred an increased indebtedness of about $69,000, of which $45,000 became due in July, August, and September, 1921; that during this period their sales amounted to less than $57,000, while their payments were about $50,-000—approximately the cost of the goods sold; that of the gross sales, Cluck, the immediate victim of the alleged robbery, sold, out of town, less than $6,000 worth, or about 10 per cent. of the gross business done. Without further elaboration, it is enough to say that the evidence was ample to warrant the jury in finding that the defendants had, shortly before the alleged robbery, greatly increased their stock and their debts for no legitimate business purpose.

In the spring of 1921, an automobile was bought, in which Cluck, with a chauffeur, made some business trips. Later he obtained a license; but he had never taken a trip alone, over night, without a chauffeur, until the trip during which the alleged robbery took place. Cluck testified that on July 11, 1921, he drove from Boston to Springfield; that on the 12th he visited stores in Springfield; that at about 7:50 in the evening he started for Hartford in the automobile, with a wallet containing about $85,000 worth of diamonds; that he also had $45 and a revolver with him; that as he neared Hartford, which is about 26 miles south of Springfield, a touring car passed him and stopped in front of him, so that he had to stop his car to avoid a collision; that a man jumped up on each side of his automobile; that one of them struck him a blow over his left eye, rendering him unconscious; and that the next thing he knew he was lying in the woods, bound and gagged with his own handkerchief. Some truck drivers picked Cluck up in Springfield, perhaps 2 miles south of the police station, after midnight, and took him to the Springfield Police Station.

[2] Assignments 1, 2, 6, and 7 all rest on the unsound contention that the court erred in admitting evidence concerning the financial condition and business dealings of the defendants prior to July 1, 1921, the date of the conspiracy as alleged in the indictment. It is elementary that the government is not, in such case, held to proof of the exact date set up in the indictment. See United States v. Sheridan-Kirk Co. (D. C.) 149 Fed. 809, 812; Wharton's Crim. Ev., § 103; Hume v. United States, 118 Fed. 689, 696, 55 C. C. A. 407.

[3] Moreover, even if the government were held to proving the conspiracy strictly as of July 1, 1921, the evidence was competent as showing the conditions existing at that time, which facilitated or made possible the conspiracy then alleged to have been formed. There is no merit in any of these assignments.

The fourth assignment perhaps calls for a brief statement of the situation.

[4] Kantor, the trustee, a government witness, testified to business dealings with the defendants prior to the alleged robbery, and at length as to conversations with the defendants. On cross-examination by the defendants' counsel, he testified that it was the custom of jewelers under certain conditions to carry in their pockets quantities of diamonds. On redirect examination, the following occurred:

"Q. 17. Now I want to ask you if it is customary to carry such amounts of diamonds as it is alleged that the defendant, Cluck, carried, on trips to Springfield and Hartford? A. Never such an amount.

"Mr. Eyges. Never such an amount. I object to that.

"The Court. Why is not that an answer? You have examined about carrying diamonds around. Now why is it not open to the other side to find out if that custom extends to such an amount?

"Mr. Eyges. I figure this way. In cross-examination, to effect his credibility, I could ask him such a question.

"The Court. That is not a matter of credibility. That was a question which I will let stand and save your exception.

"Q. 18. Now I want to ask you if it is customary to carry such amounts of diamonds as it is alleged that the defendant, Cluck, carried, on trips to Springfield and Hartford."

The defendants objected and the question was answered, "Never such an amount," and to the admission of this question and answer the defendants duly excepted.

It is now argued that this evidence was incompetent because Kantor had not qualified as an expert in the jewelry business and because there was no sufficient evidence of uniform custom or usage. The doctrines invoked are inapplicable; the evidence was properly admitted, on redirect, to clarify or modify the evidence of the witness, brought out by the defendants' cross-examination. There is no merit in this assignment.

Assignments 10, 11, 12, 13, 14, and special divisions 1 and 2 of the 15th, all rest on the proposition that the court should have directed verdicts for the defendants. As already noted, the evidence was not only, as matter of law, ample to support the verdicts, it was highly persuasive. It is difficult for this court to see how the jury could have concluded otherwise.

[5] The other requests for rulings are either waived or all fall under the familiar rule that parties are not entitled to require the court in effect to argue their case for them by charging the jury in their words as to the significance of particular parts of the evidence. Agnew v. United States, 165 U. S. 36, 57, 17 Sup. Ct. 235, 41 L. Ed. 624; Ayers v. Watson, 137 U. S. 584, 11 Sup. Ct. 201, 34 L. Ed. 803; Grand Trunk v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Coffin v. United States, 162 U. S. 664, 672, 16 Sup. Ct. 943, 40 L. Ed. 1109; Hooper v. Cuneo, 227 Mass. 37, 40, 116 N. E. 237; Com. v. Johnson, 188 Mass. 382, 74 N. E. 939.

The charge was full, careful, accurate, and contained nothing to which alert and zealous counsel could or did except.

The defendants' counsel have wisely and properly waived several assignments of error. We have carefully examined those not waived or dealt with above, and find them without merit. It is plain that the defendants had an entirely fair and legal trial, and that the judgments must be affirmed.

In each case the judgment of the District Court is affirmed.