## McNEILL v. COUNTY ELECTION BOARD OF PAWNEE COUNTY (HUNT, Intervener).

No. 21646.   Opinion Filed Oct. 7, 1930.

McCollum & McCollum, W. Lee Johnson, and L. N. Kimrey, for petitioner.

Davidson & Williams, Poe & Lundy, and Robert F. Blair, for intervener.

The respondents appeared in person.

ANDREWS, J. On Tuesday, August 12, 1930, there was held in Pawnee county, Okla., a run-off primary election at which the name of Edwin R. McNeill, petitioner herein, who will be hereinafter referred to as petitioner, and the name of Albert C. Hunt, intervener herein, who will be hereinafter referred to as contestant, appeared upon the run-off primary ballots as candidates for the nomination as Justice of the Supreme Court from the Sixth Supreme Court Judicial District of the Democratic party. At the election so held, as evidenced by the tabulation by the county election boards of the counties comprising the Sixth Supreme Court Judicial District, the petitioner received a majority of 148 votes over the contestant.

Within the time prescribed by law the contestant filed a verified petition with the county election board of one of said counties, to wit, Pawnee county, seeking to have a recount of the ballots cast at said election in certain precincts in Pawnee county designated in said petition.

The county election board of Pawnee county was about to proceed with a recount of the ballots in the questioned precincts in Pawnee county, and petitioner filed this action in this court for the purpose of prohibiting the county election board of Pawnee county and the members thereof from proceeding with the recount of the ballots in that precinct.

The issues presented herein are largely determined by the decision of this court in cause No. 21575, entitled "Joseph C. Looney, Petitioner, v. County Election Board of

Seminole County," opinion filed September 9, 1930, 145 Okla. 25, 291 Pac. 554.

The only issue here presented and not determined by that decision was the sufficiency of the allegations of the petition of the contestant for a recount. A rule for the construction of a petition for a recount of the ballots under chapter 241, Session Laws of 1929, was announced by this court in cause No. 21576, entitled "Joseph C. Looney, Petitioner, v. County Election Board of Hughes County, Respondent," opinion filed September 9, 1930, 145 Okla. 23, 291 Pac. 565.

We do not deem it necessary to discuss the contentions made herein that were determined by the decisions in those cases. The law announced in those cases should be, and is applied herein.

The pertinent portions of the petition under consideration here are as follows:

"Albert C. Hunt presents this his petition to your honorable board and respectfully shows to the board, that in the run-off primary election held on August 12, 1930, he was a candidate on the Democratic ticket for Justice of the Supreme Court of Oklahoma in and for the Sixth Supreme Judicial District, an office now held by him, and that Hon. Edwin R. McNeill was the opposing candidate on said ticket. That your board has canvassed the returns of said election in Pawnee county and announced and posted the result thereof and that said result as announced and posted is erroneous, and your petitioner challenges the correctness of the result of said election and says that in the count, canvass and return of the ballots for said office errors have occurred against him and in favor of his opponent of 213 votes.

"Your petitioner further shows that because of the errors aforesaid committed in Pawnee county, taken in conjunction with the votes as found and announced in the several other counties composing said Supreme Judicial District by the election boards of said counties a majority of votes have been given to the Hon. Edwin R. McNeill, whereas in truth and in fact if the canvass, count and return of the ballots cast in Pawnee county had been correctly made the result of said election in said Supreme Judicial District would have given your petitioner a majority of said votes and the nomination on said Democratic ticket for said office, and not to his opponent, the Hon. Edwin R. McNeill.

"Your petitioner believes that some error has occurred in each of the 36 precincts in Pawnee county and that all ballots cast in said election should be inspected and recounted by your board to the end that right and justice may prevail in said contest, and

he further believes that no objection should be made to such recount by his opponent, inasmuch as each candidate only wants counted the votes actually cast for him.

"Your petitioner believes and here charges that the following errors have occurred against him in the count, canvass and return of said ballots, to wit:

"1. In precinct No. 1, 10 votes. (There follows a statement as to each of certain precincts setting forth the number of votes in each in the same form as precinct No. 1.)

"Your petitioner further shows to the board that there was two hundred and thirteen votes cast for him in said election which were not counted for him or were erroneously counted for his opponent, and which if properly counted for him would have changed the result of said election, and taken in conjunction with the votes in the other counties in said Supreme Judicial District would have elected your petitioner as the Democratic candidate for said office."

The Hughes County Case dealt with a contest in a general primary election. We are here considering a run-off primary election. The statute here under consideration is somewhat different. It provides:

"Any candidate in a run-off primary election may challenge the correctness of the announced and posted results thereof by filing with the county election board, whose duty it is to canvass the election returns of said county, a verified petition setting forth a detailed statement, in separately numbered paragraphs, of each error or alteration complained of, which allegations, * * * as to an office for which the electors of more than one county are entitled to vote, will, when taken in conjunction with the vote cast in the other counties, change the result in his favor."

We think it should be given the same construction.

In our opinion, the petition of the contestant contains a sufficient statement of facts to comply with the requirements of the statute and to invoke the jurisdiction of the county election board.

An examination of the Hunt petition discloses that 213 errors are set forth in a detailed statement, in separately numbered paragraphs, as provided by the statute. It is alleged therein that if those 213 votes had been properly counted for him, it would have changed the result of the election, when taken in conjunction with the vote cast in the other counties in the nominating district, and would have given him the Democratic nomination for the office.

The petitioner filed herein his petition for a writ of prohibition in which he alleged

that he received a majority of 148 votes in the nominating district over the contestant for the office in question, and there is no dispute in this record as to the petitioner herein having a majority of 148 on the face of the announced and posted results from the nominating district.

It is now contended by the petitioner that the Hunt petition should have stated as a matter of fact the fact that the petitioner had received a majority of 148 on the face of the announced and posted results from the nominating district in order that the county election board of Pawnee county could have determined from the face of the petition that a correction of 213 errors would overcome the majority given the petitioner on the face of the announced and posted results from the nominating district, and, inasmuch as the Hunt petition did not state the majority that the petitioner received on the face of the announced and posted results, that the Hunt petition was insufficient to confer jurisdiction upon the county election board of Pawnee county to recount the ballots. This contention is denied by the contestant.

The 1929 Act provides for a challenge of the correctness of the announced and posted results of a run-off primary election. It provides that the challenge shall be made by filing with the county election board, whose duty it is to canvass the election returns of said county, a verified petition. It provides what that verified petition shall set forth and requires that it set forth "* * * a detailed statement, in separately numbered paragraphs, of each error or alteration complained of." The allegations thereof, as to an office for which the electors of more than one county are entitled to vote, must show such errors or alterations that, if corrected, "* * * when taken in conjunction with the vote cast in the other counties," will change the result in favor of the petitioner. It cannot be said that the act requires the petition to contain any allegation as to the vote cast in the other counties, for, by the plain terms of the act, the allegations of the petition must be such that, "* * * when taken in conjunction with the vote cast in the other counties," will change the result. If the Legislature had intended that the petition should contain an allegation as to the vote in the other counties, it would probably have provided that the allegations of the petition must be such that, if true, they would change the result of the election. The act does not so provide. The act provides that the allegations of the petition,

when taken in conjunction with the vote cast in the other counties, will change the result.

Under the provisions of section 6151, C. O. S. 1921, returns of the precinct election officers are prima facie evidence of the result of the election. Under the provisions of chapter 241, Session Laws of 1929, the prima facie case thus made out ceases with the filing of a proper petition for a recount with the county election board. Upon the filing of that petition it becomes the duty of the county election board to proceed with a recount, and the result of the vote, as determined by the recount, is certified to the State Election Board as the official returns of the election. In order for a contestant to procure a recount he is required to file a verified petition and in that petition he must inform the county election board by a detailed statement, in separately numbered paragraphs, the number of errors claimed by him to have been made by the precinct election officers in that county. He is not required to set forth either the number or the nature of any errors claimed by him in any other county and the number and nature of the errors in any other county must be set forth in the petition filed in the county in which it is alleged that those errors occurred.

When this act is examined in whole, it discloses that it contains a provision taxing the costs of the proceedings to the petitioner in the event that he should not sustain the allegations of his petition by the recount. That provision can have but one meaning, and that is, a petitioner is not required to know absolutely all the facts and circumstances in question with the counting of the ballots by the precinct election officials. The Supreme Court of Kansas, in Lawrence v. Wheeler, 93 Pac. 602, quoted with approval the following language from Kreitz v. Behrensmeyer, 125 Ill. 141, 17 N. E. 232:

"More particularity in pleading is not required than the nature of the subject is reasonably susceptible of, and it is obvious, in the very nature of things, that in most instances the candidate defeated by a miscount cannot know whose ballots were miscounted. All he can be expected to know is that about so many ballots were deposited for him at a given poll, and that the count does not agree therewith. If he knows more, it is accidental. Nor, in such case, is it of consequence whose ballot was miscounted, for the effect is the same, and the mode of proof is precisely the same, whether it was cast by one legal voter or another. It is, moreover, evident that the information upon which the contestant acts must, to a

very great extent, be hearsay. He cannot be expected to have been personally at each poll, much less to have known how each elector voted. Nor can he be expected to have personally supervised the counting at each poll; and therefore, however grossly and palpably he may have been wronged at several polls, all that he can say truthfully in respect to most of it is that he is informed and verily believes."

Following that language, we hold that more particularity in pleading is not required than the terms of the act itself and the nature of the subject is reasonably susceptible of, and it is obvious, in the very nature of things, that in most instances the candidate defeated upon the face of the announced and posted results cannot know what the result of a recount will be until the recount is had. For that reason, no contestant could ever allege what the votes cast in any county would show until a recount of those votes had been had and the determination had been made by the county election board. For us to hold that a candidate is required to state the result of a recount in other counties before he is entitled to a recount in any county would be to defeat the right of the recount entirely. We cannot so hold.

It is our opinion that when a petitioner has alleged facts in detail and in separately numbered paragraphs showing that errors or alterations have been made in the tabulation of the votes cast at a run-off primary election in the county in which the petition is filed and the number of errors or alterations so made, and that the petition contains an allegation in the language of the statute that a correction of those errors or alterations will, "* * * when taken in conjunction with the vote cast in the other counties, change the result in his favor," that the petition states a cause of action and invokes the jurisdiction of the county election board.

It is contended in this case that the authorities cited in support of the rule announced by this court in cause No. 21576, entitled "Joseph C. Looney, Petitioner, v. County Election Board of Hughes County, Respondent," promulgated on the 9th day of September, 1930, are in conflict with the rule herein announced. We do not think so.

It is, therefore, ordered that the county election board of Pawnee county, Okla., and each and all of the members thereof, be, and they are prohibited from recounting any of the ballots cast at the run-off primary election held in Pawnee county, Okla., on the 12th day of August, 1930, for the office of Justice of the Supreme Court, until such time as it shall be made to appear to that board from evidence that the ballots sought to be recounted "had been preserved in the manner and by the officers prescribed by the statute, and that they were the identical ballots cast by the voters, and that while in said custody they had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with;" that they, and each of them, be, and they are prohibited from determining the qualifications of any voter who voted at said election, and that they, and each of them, be, and they are prohibited from determining how any voter voting at said election voted thereat.

It is further ordered that in all other particulars the petition for the writ of prohibition be, and it is denied.

A writ is ordered to issue in accordance herewith.

LESTER, V. C. J., and HEFNER and SWINDALL, JJ., and BROWN, Special Justice, concur.

MASON, C. J., and CLARK, RILEY, and CULLISON, JJ., dissent.

---

RILEY, J. (dissenting). It is my view that the writ as prayed for should issue for reason that a "detailed statement" as required by the statute concerning each error or alteration complained of was not contained in the petition presented to the election board upon which recount was sought.

McCrary on Elections (4th Ed.) p. 316, par. 435, lays down the rule that:

"An application for a recount of the ballots cast at an election will not be granted, unless some specific mistake or fraud be pointed out in the particular box to be examined. Such recount will not be ordered upon a general allegation of errors in the count of all, and giving particulars as to none of the boxes."

---

CLARK, J. (dissenting). I do not agree that the petition filed before the county election board of Pawnee county by intervener was sufficient to invoke the jurisdiction of that board. The majority opinion in an attempt to distinguish this case from the case of Looney v. County Election Board of Hughes County et al., 145 Okla. 23, 291 Pac. 565.

"The Hughes County Case dealt with the contest in the general primary election. We are here considering a run-off primary election. The statute here under consideration is somewhat different. It provides. * * *"

In the Hughes County Case, supra, there were two candidates for district judge. The one receiving the highest number of votes would be nominated. That election was held on July 29, 1930. In the case at bar there were two candidates for Justice of the Supreme Court in the run-off primary held August 12th. The law as applied in the Hughes County Case should be applied in this case, and in my opinion the two cases cannot be distinguished.

Statutory proceedings authorizing the contest of elections are summary in their nature, and he who contests the right of another for the nomination should be able with certainty to plead a state of facts which, if true, would entitle him to the nomination.

The petition filed before the Pawnee county election board by intervener failed to state facts sufficient to invoke the jurisdiction of that board and give it authority to enter upon a hearing, which hearing has for its purpose the impeachment of the returns made by each and all of the precinct election officials in Pawnee county, Okla.

The statute in question reads as follows:

"Any candidate in a run-off primary election may challenge the correctness of the announced and posted results thereof by filing with the county election board, whose duty it is to canvass the election returns of said county, a verified petition setting forth a detailed statement, in separately numbered paragraphs, of each error or alteration complained of, which allegations as to a county office or as to an office for which not more than the electors of one county are entitled to vote, if true, would change the result in his favor, and which allegations as to a state office or as to an office for which the electors of more than one county are entitled to vote, will, when taken in conjunction with the vote cast in the other counties, change the result in his favor."

According to the holding of this court and other courts, before intervener is entitled to a hearing he must comply with the statute, and jurisdictional facts must appear upon the face of his petition for a recount. Could it be seriously contended that intervener would be entitled to a recount if the returns from the district involved had shown that he received a majority of all the votes cast in the district? Or that if all errors complained of in the petition filed had been given him, he still would not have sufficient votes to entitle him to the nomination? The statute says, "that, if true, * * * will, when taken in conjunction with the vote cast in the other counties, change the result in his favor."

The word "conjunction" Webst. Dict. defines: A state of being conjoined, united or associated. If the word "conjunction" means joined or united, taken in its ordinary meaning as used, then the words "taken in conjunction with the vote cast in the other counties" mean, added to or joined with the vote cast in the other counties, will change the result in favor of intervener.

The United States Circuit Court of Appeals of the Fifth Circuit in Hume v. United States, 118 Fed. 689, in construing the word "conjunction," said:

"And the indictment goes further than to say that Guynes was acting for himself. It adds, 'and in conjunction with, A. Effron and * * * W. J. Hume.' It is urged by counsel that it is 'difficult to determine' just what is meant. But we must take it that the word 'conjunction' was used with its ordinary meaning,—'the state of being conjoined, united, or associated'; 'union, association, league.' Webst. Dict. Placing that meaning on the word, it seems clear that the grand jury charged that Guynes, in posting the letters, was acting for himsef in union with the other defendants who concocted the scheme to defraud."

How could the election board of Pawnee county determine the alleged errors in the petition when joined with the vote cast in the other counties when the petition did not state the vote cast in Pawnee county or the vote cast in any other county for intervener or his opponent? The petition is defective in that it does not plead a detailed statement of the errors or alterations complained of. It does not plead the vote cast either for intervener or his opponent in Pawnee county or in the district. It names but one county and that is Pawnee county. The election board could not take the vote cast and the errors complained of in the petition and consider them in conjunction with the vote cast in the other counties when the vote cast in the other counties was not stated in the petition.

There is nothing contained in said petition which will give the county election board jurisdiction to hear and determine the same. Mere conclusions of fact, that if certain corrections were made in the announced and posted result, intervener would then receive a majority of the votes cast, does not plead facts, is not a detailed statement as required by the statute in the instant case, and is insufficient on its face. At page 150, infra, the majority opinion says:

"If the Legislature had intended that the petition should contain an allegation as to the vote in the other counties, it would probably have provided that the allegations of the petition must be such that, if true, they would change the result of the election. The act does not so provide. The act provides that the allegations of the petition, when taken in conjunction with the vote cast in the other counties, will change the result."

I think the act of the Legislature is comprehensive, and while it does not contain a copy of the petition to be filed, it does make distinct requirements and necessary allegations that should be made before the board has jurisdiction to order a recount.

The statute in question, section 6, supra, reads in part as follows:

"Any candidate in a run-off primary election may challenge the correctness of the announced and posted result thereof by filing with the county election board, whose duty it is to canvass the election returns of said county, a verified petition setting forth a detailed statement, in separately numbered paragraphs, of each error or alteration complained of. * * *"

I am at a loss to understand how a candidate in a run-off primary election may challenge the correctness of the announced and posted results thereof in a petition filed by intervener which does not state the announced and posted result of the election in a single county in the district. Can it be said that the petition filed by intervener, which did not contain therein the announced and posted results of a single precinct or a single county in the district, was sufficient to challenge the announced and posted result? What announced and posted result is challenged by the petition which fails to plead a single announced and posted result? The mere belief of the intervener that if the votes were recounted the result would show a majority for him does not supply the radical omissions in the petition for a recount, and when the statute is so invoked the party seeking its benefits must bring himself within its spirit and its letter.

The rule that should be applied in this case is stated in the following cases:

In the case of Looney v. County Election Board of Hughes County et al., 145 Okla. 25, 291 Pac. 565, the Supreme Court of Oklahoma in the first and second paragraphs of the syllabus says:

"1. The verified petition provided by section 6, ch. 241, Session Laws of 1929, must set forth a detailed statement in separately numbered paragraphs of each error or al-

teration complained of, and the allegations thereof must show that, if true, the petitioner received the majority of all votes cast for said nomination, or show that no candidate received such a majority, and that the petitioner received either the highest or the next highest vote cast for said nomination.

"2. Section 6, ch. 241, Session Laws of 1920, provides for a verified petition and what the 'allegations thereof' shall show. The 'allegations thereof,' as used in that section, refer to allegations of fact and not conclusions of law or fact. The showing required by that section must be by a statement of facts from which, if true, will appear that the petitioner received the majority of all votes cast for said nomination, or show that no candidate received such a majority, and that the petitioner received either the highest or the next highest vote cast for said nomination."

The Supreme Court of Oklahoma Territory in the case of Roberson v. Hubler, 11 Okla. 297, 67 Pac. 477, in the third paragraph of the syllabus said:

"A petition which shows that the number of ballots cast for plaintiff, which were wrongfully rejected as mutilated ballots, when added to the number of ballots counted for the plaintiff, only make a tie between the plaintiff and the defendant, in the absence of an allegation that the commissioners did not determine by lot which should be elected, as provided in section 63 of the election law of 1899, fails to state a cause of action, and a demurrer directed thereto on that ground should be sustained."

In the case of Robertson et al. v. Board of County Com'rs of Grant County, 14 Okla. 407, 79 Pac. 97, the Supreme Court of Oklahoma in the second paragraph of the syllabus said:

"A petition in an action to contest an election which alleges generally that the judges and clerks of election permitted a certain number of illegal votes to be cast in favor of a certain town for county seat, and that without such illegal votes the plaintiffs' candidate would have been elected and setting out the number of votes which the petitioner claims each candidate legally received, and which, if correct would give to the petitioners' candidate a majority of all of the legal votes cast, is not sufficient to state a cause of action. The pleader must set out the facts from which the court can say, as a matter of law, that the votes were illegal, and that without such illegal votes the result of the election would have been in favor of plaintiffs' candidate."

In the case of Crownover v. Miller, 197 Pac. 817, the Supreme Court of Nevada said:

154

"Statutory proceedings regarding election contests * * * are special and summary in their nature, and generally a strict observance of the statute, so far as regards the steps necessary to give jurisdiction, is required, and the jurisdictional facts must appear on the face of the proceedings."

In the case of Borders v. Williams, 57 N. E. 527, the Supreme Court of Indiana in the first paragraph of the syllabus said:

"Under Burns' Rev. St. 1894, paragraphs 6312, 6314, providing for the contest of elections on certain grounds, and requiring the contestor to present a written statement specifying the grounds of contest, an averment as a ground of contest that contestor received more votes than the contestee is insufficient, as tantamount to a general averment that the judgment of the county board of canvassers was erroneous."

In the case of Batterton v. Fuller, 60 N. W. 1071, the Supreme Court of South Dakota in the first paragraph of the syllabus said:

"To authorize a candidate or person to institute an election contest in his own name under the provisions of section 1489, Comp. Laws, such candidate or person must state such facts in his notice of contest as would prima facie entitle him to the office, and he must also therein claim a right to the office himself."

In the case of Whitney v. Blackburn, 21 Pac. 874, the Supreme Court of Oregon in the sixth paragraph of the syllabus said:

"While it is the duty of courts to disregard mere technical rules or defects, and to liberally construe the statute of contested elections, that the rights of the people may be preserved, and that no protection may be afforded to fraud, yet he who undertakes to contest the right of another to an office to which such other has been declared elected, by a tribunal authorized by the people, ought to have some well-defined 'cause,' and to be able to state it with sufficient certainty as to notify and inform the other party of the substance of the facts upon which he relies to defeat his title and to authorize the court to make the inquiry."

The authorities cited herein state the rule that I believe should be followed.