McKinney v. Nashville.

McKINNEY v. NASHVILLE.

(*Nashville.*   March  16,  1899.)

1. MEASURE OF DAMAGES.  *For property taken for public use.*

In estimating the value of property taken for a public use, the
fair market value is the one to be ascertained.  In ascertain-
ing this value, all the capabilities of the property and all the
legitimate uses of which it is susceptible should be taken into
consideration.  The particular use for which the property is
most valuable or to which it is at the time adapted and ap-
plied, though proper matters for consideration, is not controll-
ing as to this value.  (*Post, pp. 132–138.*)

Cases cited and approved: Woodfolk v. Railroad, 2 Swan, 437;
Alloway v. Nashville, 88 Tenn., 510; 58 Mo., 491.

2. SAME.  *Same.*

If, in a proceeding to condemn property for public use, it is
shown that its rental value has been inflated by an unlawful
use of the property—*e. g.*, for gaming purposes—the jury
should be instructed to discard rental value, to the extent of
the inflation, as evidence of value of the property.  (*Post, pp.
138–140.*)

---

FROM  DAVIDSON.

---

Appeal in error from the Circuit Court of Davidson
County.   J. W. BONNER, J.

E. H. EAST, for McKinney.

PRICE & McCONNICO, for city.

BEARD, J.  This is a condemnation proceeding in-
stituted by the municipal authorities of Nashville.

The right to condemn the property in question is conceded by its owner, the plaintiff in error; the controversy is as to the rule for ascertaining value submitted by the trial Judge. In his charge to the jury he said: "In considering the uses for which the property was adapted, you must consider all le gitimate purposes for which it may be used and must not confine yourselves to any one special or particular use as going to indicate its value." And again: "You will consider its location and publicity, its situation with reference to the Public Square and Deaderick street, and its vicinity to other property used for business or other purposes. You will also consider the adaptability of the property to any and all legitimate purposes to which it might be applied and its rental value for any and all such legitimate purposes, as well as other elements of value developed by the proof" in fixing the compensation to which the owner of the property was entitled upon its appropriation to a public use.

The record disclosed that this property was more valuable, by reason of location, for saloon purposes than any other, and that at the time of the institution of the present proceedings it was under lease for a term of five years for a good annual rental, and was then used to carry on a saloon business. In view of this condition, the contention of plaintiff in error is best stated in the words of his counsel, taken from his brief and argument, which are as follows: "If a saloon keeper, because of the location

of property, its adaptability to his intended uses, will give more for it than another whose occupation is different can afford or will give, looking to his intended use for it, why should the owner not receive the highest value which anyone would give for the property? I do not mean this highest value for one use should be considered in connection with its value for other uses in order to diminish its value, but that it constitutes its value—is its value in the market." And again: "Instead of saying to the jury you must consider all legitimate purposes for which it might be used, he should either have said to the jury the owner has a right to its value for the use for which it would bring the most in the market, or that they should value the property on the basis of its most valuable use."

These paragraphs, taken from the instructions of the trial Judge and the argument of the counsel criticizing them, present sharply the issue on this point which is presented for our determination. On this issue we do not hesitate to approve the charge of the trial Judge.

Lewis, in his work on Eminent Domain, Sec. 478, says: "In estimating the value of property taken for public use, it is the market value of the property which is to be considered. The market value of property is the price which it will bring when it is offered for sale by one who desires but is not obliged to sell it and is bought by one who is under no necessity of having it. In estimating its

value all the capabilities of the property and all the uses to which it may be applied or for which it is adapted are to be considered, and not merely the condition it is in at the time and the use to which it is applied by the owner." To this text many cases are cited by the author. One of these cases is *Mississippi Bridge Co.* v. *Ring*, 58 Mo., 491, in which the Court say: "The correct rule to be applied relates to the value of the land to be appropriated, which is to be assessed with reference to what it is worth for sale in view of the uses to which it may be put, and not simply in reference to its productiveness to the owner in the condition in which he has seen fit to have it."

Nor do we find the authorities relied upon by plaintiff in error to support his contention out of line with the rule thus announced, with one possible exception. We will now examine these authorities.

In *Chicago, etc., R. R. Co.* v. *Jacobs*, 110 Ill., 414, the trial Court had said to the jury, as is insisted should have been done in this case, "that the owner of property to be condemned is entitled to its actual value for its highest or best use to which the property could be put, and in case" it "has an actual value for a specified use, and that such property is devoted and adapted to such use, then the owner is entitled to such value." On appeal this was held to be error, and the Supreme Court said: "The jury should have been instructed in such a way that they would look to the market value

of the property. But the instruction opens up a
wider field of investigation. It was a fair invitation
to the jury to enter into another field of inquiry
as to the value of the lots—to ignore the market
value and determine the actual value for a specified
use.'' The case was, therefore, reversed for this
error of the trial Judge.

We think this statement of that case shows it to
be in the face of the insistence of plaintiff in error
and places it in line with the text of Mr. Lewis.

·The case of *Gardner* v. *Inhabitants of Brookline,*
127 Mass., 358, so far as we can see, does not
shed any light on this question; but the case of
*Johnson* v. *F. & M. Ry. Co.*, 111 Ill., 414, seems
to furnish authority for the contention of plaintiff
in error. In that · case, upon the trial below, the
Court had excluded evidence offered by the owner
of the property which it was sought to have con-
demned, that it had a special value for railroad
purposes—and it was for these purposes condemna
tion was sought—beyond its general market value.
The Supreme Court held this ruling to be error,
and say: ''If property has a special value, from
whatever cause, that value belongs to the owner,
and he is entitled to be paid for it by the party
seeking compensation.''

The opinion in this case was delivered at the
November term, 1884, by the Court composed of
the same Judges which announced the opinion in
the case of *Chicago, etc., R. R.* v. *Jacobs, supra,*

at the immediately preceding spring term. It is hardly to be supposed this latter case was overlooked, and yet it is not mentioned in that opinion. Nor do we believe it was intended to overrule it *sub silentio*, and establish a new general rule. On the contrary, we are satisfied, from the description of the property found in the opinion, that it was a strip of ground valuable largely, if not exclusively, for railroad purposes, and therefore without any general market value, and that the Court simply intended to protect this exceptional property to the owner by applying a measure of compensation which gave to the owner the full equivalent of this exceptional use. If this be the interpretation, then it is in harmony with a number of other cases, and it does not conflict with the general rule as to market value.

Plaintiff in error relies also upon the statement of Mr. Randolph, in his law of Eminent Domain, that "the property must be valued at its most profitable use." Sec. 249. To this text the author cites alone the case of *Goodin* v. *Cin., etc., & W. Canal Co.*, 18 Ohio St., 169. The opinion in that case does not support the author's text, at least as it is interpreted by the plaintiff in error. The Court say there: "The true value of anything is what it is worth when applied to its natural and legitimate uses—its best and most valuable uses. The estimate should have been of its value generally for any and all uses, and not for any partic-

ular, and especially not for any inferior or inappro-
priate use." Thus stated, we see no divergence
from the rule as stated by Mr. Lewis.

Plaintiff in error also relies on a statement taken
from the text of Mills on Eminent Domain, p. 168,
to the effect that "the owner has a right to its
[property's] value for the use for which it would
bring the most in the market." While this is em-
bodied in the text, yet it is taken literally from
the opinion in *King* v. *Minneapolis Co.*, 32 Minn.,
224, the case which the author cites in support.

In that case the property sought for condemna-
tion had upon it a manufacturing establishment
which was in operation, and the error alleged was
that the trial Court had improperly let in evidence
of that fact. The Court held that this was not
error, and say that the owner "is entitled to the
value of his property for any use to which it may
be applied and for which it would ordinarily sell in
the market. It is, we think, equally true that any
evidence is competent and any fact is proper to be
considered which legitimately bears upon the ques-
tion of the marketable value of the property. In
this case evidence was introduced tending to prove
that the fact of a business having been established
and carried on on the premises for so long a time,
materially increased the market value of the prop-
erty." It is in this connection the sentence already
quoted occurred, and the Court further along, as
well as in the paragraph just given, show clearly

that their only meaning in the use of this sentence is that evidence of this special valuable use is competent to go to the jury, in order to enable them to estimate the fair market value of the property. This case is clearly in line with the rule as heretofore taken from Lewis on Eminent Domain.

We have devoted this much time to the examination of the authorities relied on by the counsel for the plaintiff in error, out of deference for the ability and earnestness with which they have been pressed upon us, notwithstanding the fact that the rule has been established in this State against the contention of plaintiff in error, at least since the case of *Woodfolk* v. *N. & C. R. R.*, 2 Swan, 437, and was reannounced in *Alloway* v. *Nashville*, 88 Tenn., 510, in which latter case, in adopting the language of the trial Judge in his instruction to the jury, it was said by the Court that, in cases like the present, ''the cash market value of the land'' is the measure of compensation.

In addition to the constraining authority of *stare decisis*, the rule commends itself as an eminently just one; and, as the trial Judge gave the plaintiff in error the full benefit of it in the admission of testimony and in his charge to the jury, the assignment of error on this point is overruled.

In the progress of the trial of the case, evidence was permitted to go to the jury that tended to show that gambling was frequently, if not habitually, carried on in one or more of the rooms of

the property, and that this fact inflated the rental value of the property. In regard to this, the trial Judge said to the jury if they found that gaming was carried on there, and that it did inflate the rental value, then, to the extent of such inflation, the rent received cannot be considered as indicating either the rental or the market value." We think there is no error in this. Gambling is an offense against the law, and the use of any portion of this property for gambling purposes was in violation of the law. And if it was true that such illegitimate use did inflate the rental value of this property, then the jury were properly told that a rent inflated by this use, to the extent of the inflation, could not be taken into consideration as constituting a part of the rental value. It is true that it might be a matter of difficulty to determine where the rental value from a legitimate use ended and that from the illegitimate use began, yet that is the misfortune of the owner, for which the city is not responsible.

In this case, however, we think that there is sufficient evidence to guide the jury, at least approximately, in determining the value of this inflation. It is true it is found largely in the opinion of witnesses, which is necessarily somewhat speculative, but not more so than is ordinarily found as to questions of value.

We are satisfied, in examining this record, that, taking into consideration all the elements that make

up market value—the eligibility of the location of the lot, its front and depth, its rental income, and especially the old and dilapidated condition of the house on the lot—that the jury fixed a valuation of this property which affords just compensation to the plaintiff in error.

The judgment is affirmed.