### TATE v. BAUGH, Sheriff.

(Circuit Court of Appeals, Sixth Circuit. April 9, 1920.)

No. 3324.

1. **Appeal and error ☞987(2)—Verdict supported by any competent evidence not reviewable.**

Under Rev. St. § 1011 (Comp. St. § 1672) a federal appellate court cannot disturb the finding of a jury on a question of fact, if there is any competent evidence to support the verdict.

2. **Sheriffs and constables ☞100—Sheriff not liable for homicide by deputy not in course of official duty.**

A sheriff is not liable for the death of a person shot and killed by a deputy, who held a warrant for such person's arrest, where the deputy made no attempt to make the arrest, but shot deceased before announcing that he held a warrant.

3. **Sheriffs and constables ☞140—Instruction as to evidence to establish status as deputy-sheriff correct.**

In an action to charge a sheriff with liability for death of a man, killed by one alleged to have been acting as deputy sheriff for his arrest, it was not error prejudicial to plaintiff to instruct that there was no evidence of the appointment of such person as a deputy sheriff, as required by the statutes of the state, where such was the fact, and where it was also charged that defendant might be liable, if he specially deputized such person to serve the warrant, or if he knew or should have known that it would be delivered to him for service, under his general reputation as a special deputy.

4. **Evidence ☞123(2, 11)—Statements made after transaction in issue not competent.**

In an action to charge a sheriff with liability for the death of a man, killed by one alleged to have been acting as defendant's deputy to arrest deceased, statements made by such person afterwards, on returning the warrant to the justice who issued it, and entries then made by the latter in his docket, held incompetent.

---

[1] Opinion below.

5. **Sheriffs and constables ⬌138(2) — Evidence inadmissible to establish appointment as deputy sheriff.**

   Evidence that a sheriff, as ex officio tax collector, appointed a certain person as a deputy tax collector, *held* not admissible to establish appointment of such person a deputy sheriff.

6. **Appeal and error ⬌237(2), 1050(2)—Evidence becoming irrelevant must be met by motion to strike; admission not reversible where no prejudice results.**

   Admission of evidence, which became irrelevant in view of the issues submitted to the jury, *held* not ground for reversal, in the absence of motion to exclude it, and where it clearly was not prejudicial.

7. **New trial ⬌99—Denial of motion based on newly discovered evidence within discretion of court.**

   Denial of a motion for new trial on the ground of newly discovered evidence *held* not an abuse of discretion.

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action at law by Gladys Weathersby Tate against J. O. Baugh, Sheriff of Coahoma County, Miss. Judgment for defendant, and plaintiff brings error. Affirmed.

See, also. 252 Fed. 317.

Gerald FitzGerald, of Clarksburg, Miss., for plaintiff in error.

J. W. Cutrer, of Clarksdale, Miss., for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. The action below was brought to recover damages for the wrongful killing of plaintiff's husband, Russell L. Tate, by George Anderson, while acting in the capacity of deputy sheriff by appointment of J. O. Baugh, sheriff of Coahoma county, Miss., in the attempt to arrest the deceased upon a warrant issued by A. H. Miller, justice of the peace. The defendant denied that he ever appointed Anderson as deputy sheriff, that he had specially deputized Anderson to serve the same, or that he had any knowledge, prior to the killing of Tate, that such a warrant had been issued.

It appears from the evidence that, at the time Tate was killed, Anderson was marshal of the municipality of Jonestown and as such marshal was ex officio constable of the county of Coahoma; that, shortly prior to the issuing of the warrant, Miller, the justice of the peace, told Anderson that he had information that Russell Tate had beaten a negro named Ambrose Walker, and that it was the duty of Anderson to make an affidavit against Tate. Anderson thereupon filed the affidavit with Miller, justice of the peace, who issued a warrant for the arrest of Tate, addressed to any lawful officer of Coahoma county, Miss., and delivered the same to George Anderson. It further appears that the justice of the peace entered in his docket that this warrant was issued to the sheriff, but that this was done in pursuance of general instructions given him by Mr. Kirby, county attorney, some time prior to the issuing of this particular warrant, and that after these instructions were given him he made similar entries in his docket in relation to all warrants that were issued by him. It further appears from the evidence, however, that he did not communicate in any way

with the sheriff, or advise him that a warrant had been issued for Tate and delivered to Anderson.

The record discloses that, while Tate was walking along the street, Anderson stepped out of a store, and, without anything being said by either, shot Tate with a shotgun; that at the same time Tate was shot in the back of the head with a pistol by some person other than Anderson; that Anderson then shot him again with a shotgun; that, after he was shot the second time by Anderson, Tate reeled and staggered, and fell on his face in the doorway of the store of the Jonestown Drug Company; that, after he had fallen, Anderson came up to him, threw up his coat, and took a pistol out of his pocket, and when he raised up said, "I have a warrant in my pocket for this man now."

The jury returned a verdict for the defendant.

It is insisted that the court erred in its charge to the jury, in its refusal to charge as requested by plaintiff, in excluding material evidence, in the admission of evidence, in refusing to grant a new trial on account of newly discovered evidence, and that the verdict is contrary to the law and the evidence.

[1] In the disposition of this last assignment of error, it is sufficient to say that there is a sharp conflict in the evidence upon material issues of fact. The jury found from this evidence for the defendant. Under the provisions of section 1672, Comp. Stat. 1916 (R. S. § 1011), this court has no authority to disturb the finding of the jury upon a question of fact, if there is any evidence to sustain that verdict. Hume v. United States, 118 Fed. 689, 55 C. C. A. 407; Transit Development Co. v. Cheatham Electric Switching Device Co., 194 Fed. 963, 114 C. C. A. 599; Miles v. United States, 103 U. S. 304, 312, 313, 26 L. Ed. 481; Troxell, Adm'x, v. Railroad Co., 227 U. S. 434–444, 33 Sup. Ct. 274, 57 L. Ed. 586.

The jury having determined these disputed questions of fact in favor of the defendant, it follows that the verdict is not contrary to the law applicable to the facts necessarily found by the jury.

[2] The plaintiff excepts to that part of the charge of the court to the effect that, if Anderson was not in fact attempting to execute this warrant for the arrest of Tate at the time he shot and killed him, the defendant sheriff would not be liable for the acts of Anderson, regardless of whether he was or was not a duly appointed and acting deputy sheriff.

This was an important question of fact, to be determined by the jury in this case. If it were conceded that Anderson was at that time a deputy sheriff, appointed as such by the defendant in this action, that fact would not necessarily prove that he was acting in such official capacity at the time he shot and killed the plaintiff's husband. The court further charged the jury upon this issue that:

"If you should find from the greater weight of the evidence that Anderson was a deputy sheriff under the defendant, Baugh, and had in his possession a writ, whether it was valid or invalid, for the arrest of Tate, and while he was attempting to execute that writ on Tate he wrongfully killed him, that is, he killed Tate while exercising more force than was necessary to overcome any resistance to arrest that Tate may have made at the time, then defendant would be liable for whatever damages the evidence warranted."

This paragraph of the charge, in connection with the paragraph to which exceptions were taken, fairly and fully states the law applicable to this issue. There is no evidence tending to prove that Tate made any resistance whatever. In fact, there is no evidence that he knew Anderson was attempting to arrest him upon this warrant, or upon any warrant, so that in its last analysis this part of the charge left for the determination of the jury the one question of fact vital to plaintiff's right to recover upon any phase of the other evidence in this case, and that is whether Anderson was, at that time, attempting to arrest deceased upon this warrant, or was merely an assassin lying in wait for his victim, with the intent and purpose to kill him at sight, either in revenge for personal injuries suffered by him at the hands of Tate some time prior to this, or in furtherance of a conspiracy to kill Tate, between himself and the person who shot Tate in the back of the head, immediately after Anderson fired the first shot.

The fact that Anderson did not proceed in the usual and ordinary manner to make an arrest, by informing the deceased that he was under arrest and the nature of the charge against him, would tend strongly to prove that his purpose was not to arrest, but to kill. The evidence to the effect that some other person shot Tate from the rear almost simultaneously with the first shot fired by Anderson would also tend to prove that Anderson had entered into a conspiracy with the person who fired that shot, to murder Tate. What Anderson said immediately after he had shot Tate to death was admissible as a part of the res gestæ; but it was a question for the jury to determine whether what was said by him at that time tended to establish the fact that he was attempting to arrest Tate upon this warrant, or that it was a mere self-serving declaration, made by Anderson for the purpose of shielding himself under an official cloak from prosecution and punishment for deliberate and premeditated murder.

If, on the other hand, Anderson was a deputy sheriff under Baugh, and he was in fact attempting to arrest Tate upon this warrant, and in making such attempt to arrest him unnecessarily, cruelly, and brutally murdered Tate, the defendant would be liable, and the trial court so charged.

[3] It is also insisted that the court erred in charging the jury that there was no evidence to establish the fact that Anderson was appointed a deputy sheriff as the statute of Mississippi requires. Section 4664 of the Mississippi Code of 1906 provides that a sheriff may appoint one or more deputies, but that every such appointment must be in writing, and the person appointed, before entering upon the duties of that office, must take and subscribe an oath faithfully to execute the office of deputy sheriff, according to the best of his ability and judgment, and that this written appointment, with the certificate of oath, shall be filed and preserved in the office of the clerk of the board of supervisors.

There is no evidence in this record to show that Anderson was appointed in writing, that he had taken an oath of office, or that his written appointment, with the certificate of oath, was filed and preserved in the office of the clerk of the board of supervisors. Therefore the

charge that there was no evidence tending to prove that Anderson was lawfully appointed a deputy sheriff under the statute of Mississippi was not erroneous.

The court further charged, however, that it might be shown that at the time of the homicide Anderson was acting as a deputy sheriff, independent of the fact that there was no proof that he was a regular deputy sheriff appointed in writing, and also that Anderson might have been specially deputized by the sheriff to execute this particular warrant, or that if the sheriff knew, or that it was of such common occurrence that he would have been bound to have known, or should have known, that Miller, who issued this warrant, would deliver it to Anderson, to be executed under his general reputation as a special deputy, that Baugh would be responsible.

This part of the charge, not only covers many of the special charges requested by plaintiff, but it would seem to be as favorable to the plaintiff as the facts of the case would permit, especially in view of the uncontradicted evidence of the defendant himself that, after information had reached him in reference to a quarrel between Tate and Anderson some weeks prior to this homicide, he instructed the chief deputy and office deputies not, under any circumstances, "to specially deputize Anderson to serve any papers pertaining to the interest of Mr. Tate in any way," and that he gave Mr. Miller, the justice of the peace, the same instructions. Mr. Miller, the justice of the peace, called as a witness on behalf of plaintiff, after some hesitation, also testified:

"I remember something on that line being said; I remember it."

This warrant was directed to any lawful officer of Coahoma county. Anderson, as the marshal of Jonestown, and as ex officio constable of Coahoma county, was such an officer, and the justice of the peace had a right to deliver him this warrant, as marshal or constable, with or without the consent of the sheriff. Miller further testified that, "if George Anderson was a general deputy of the sheriff of Coahoma county, I didn't know it personally"; but he did know that Anderson was marshal of Jonestown and ex officio constable of Coahoma county. Therefore the presumption naturally arises that he did not intend to deliver this warrant to him as deputy sheriff, for he did not know that he was deputy sheriff, but that he did intend to deliver it to him either as marshal or constable. If the jury believed the evidence of Mr. Miller in this respect, it could have arrived at no other verdict.

The plaintiff's first and third requests to charge were properly refused, not only for the reason that they were fully covered by the general charge, but for the further reason that there was no evidence that Miller, justice of the peace, in the exercise of his discretion, directed this warrant to be executed by the sheriff. Mr. Miller's evidence is to the direct contrary.

Requests 2, 6, 7, 10 and 11 were substantially covered in the general charge.

Request 8 is a mere abstract statement of law, and so far as applicable to this case is fully covered by the charge as given.

Request 9 relates to the measure of damages. The jury having found in favor of the defendant, the measure of damages is not here important.

Requests 4 and 5 were properly refused, for the reason that the legal status of Anderson was fixed and established at the time of the homicide. At that time he was or was not acting as deputy sheriff, and neither Anderson nor the sheriff could by any act subsequent to that transaction change this legal status; but statements made by the sheriff after Tate was killed were admissible as tending to prove that Anderson was then acting as deputy sheriff, either by appointment or with the knowledge and consent of the defendant.

Plaintiff's special request, made after the general charge had been given, and before the jury retired, was properly refused, for the reason that the court had already charged the substance of this request in even stronger language than is contained in the request itself, and in addition thereto carefully instructed the jury as follows:

"You could not and should not, and no doubt you will not, attempt to escape your own responsibility by agreeing with whatever the court might think about it, to get rid of it: but you must discharge your own obligation in that regard, and determine for yourselves whether or not the plaintiff is entitled to recover under the rules of law as I have stated them to you."

What has been said in reference to the first exception to the charge applies equally to the fifteenth assignment of error, for it follows that, if the charge as given was correct, it was not error for the court to read that portion of the charge to the jury when it asked for further instructions upon that subject.

[4] The plaintiff sought to introduce in evidence by the witness Miller, justice of the peace, statements made by Anderson to him, and also what he had written in his docket after Tate had been killed, and after Anderson had returned the warrant to him. This evidence was properly excluded. What Anderson said to the justice of the peace when he returned this warrant could not be offered in evidence against this defendant. It necessarily follows that what was written in the docket by the justice of the peace, based upon statements made to him by Anderson after the killing, would not be competent.

[5] Exceptions were also taken to the exclusion of evidence tending to prove that Anderson had acted as deputy tax collector. While the sheriff, under the law of Mississippi, is ex officio tax collector, nevertheless this action is an action against the defendant as sheriff, and not as tax collector. The appointment by the sheriff, as ex officio tax collector, of a deputy tax collector, would not be an appointment as deputy sheriff, and therefore that evidence was properly excluded.

[6] The plaintiff excepted to the admission of evidence tending to prove that Tate had a reputation in that community for violence. This evidence was offered and admitted upon the cross-examination of plaintiff's witness Miller, and before any evidence had been offered tending to prove the facts and circumstances of the homicide. At that time this evidence was competent, in view of the issue tendered by the petition that Tate had been killed by Anderson while attempting his arrest; but, in view of the whole evidence, it is apparent that this

testimony was not relevant, and ought to have been excluded, and probably would have been excluded, had the defendant made that request at the close of all the evidence, for it then became apparent that Tate not only offered no violence, and made no resistance whatever, but that he had no opportunity to resist, and that he did not know and could not have known that Anderson was attempting to arrest him— if in fact he was making such attempt.

This evidence, however, while not relevant to the issues actually submitted to the jury, could not have been prejudicial, for the reason that there is no claim made by the defendant that Anderson killed Tate because of any resistance or violence on his part. Certainly the verdict of the jury was not predicated upon the assumption that, because of Tate's reputation for violence, Anderson had a right to kill him at sight.

[7] It is also insisted that the trial court was guilty of abuse of discretion in overruling the motion of the plaintiff in error for new trial upon the ground of newly discovered evidence. The affidavit filed in support of this motion does not show what diligence, if any, was exercised by the plaintiff or her counsel in procuring this evidence prior to the trial. It merely states that counsel for the plaintiff did not have reasonable information to lead him to believe that the party from whom he procured the information knew said facts or would testify thereto. Perhaps affiant means, by "reasonable information," that he had no information; but the affidavit does not so state.

It also appears from this affidavit that the newly discovered evidence is cumulative in its nature, tending only to establish that Baugh, as sheriff, recognized Anderson as a general deputy sheriff for the Jonestown district, and not that he had ever been appointed as such deputy sheriff under the statute of Mississippi. This evidence would, of course, have been competent upon the trial of this case, but could hardly have resulted in a different verdict, in view of the evidence of the plaintiff's witness Miller that he did not know that fact, and that "I called upon him as constable of that district, and he agreed to act."

For the reasons stated, the judgment is affirmed.

