## MORTON BUTLER TIMBER CO. et al. v. UNITED STATES.
### No. 7492.

Circuit Court of Appeals, Sixth Circuit.
June 28, 1937.

man, all of Knoxville, Tenn., on the brief), for appellants.

R. S. Boyd, of Washington, D. C., and J. W. Cooper, of Knoxville, Tenn. (Frank Chambers, of Washington, D. C., James B. Frazier, Jr., and Robert T. Kennerly, both of Knoxville, Tenn., and J. Gordon McKenzie, of Dayton, Tenn., on the brief), for the United States.

Before SIMONS and ALLEN, Circuit Judges, and MARTIN, District Judge.

MARTIN, District Judge.

The General Assembly of Tennessee, by chapter 54 of the Acts of 1927 and chapter 99 of the Acts of 1929, granted the United States of America the necessary consent to acquire lands, pursuant to Act of Congress of May 22, 1926 (as amended U.S. C., title 16, § 403 et seq. [16 U.S.C.A. § 403 et seq.]), establishing the Great Smoky Mountains National Park. In an appropriate proceeding, large tracts of land owned by appellants in Blount county, Tenn., were condemned for public use as a part of the National Park.

On the trial below, the jury awarded the appellant landowners $483,500 as compensation for the land taken; and the District Court entered judgment thereon. Dissatisfied with the verdict, appellants seek a new trial on assignment of errors to the admission and exclusion of evidence, alleged misconduct of the government attorneys, inadequacy of the verdict, and because of newly discovered evidence. They charge error, also, in the insufficient allowance of interest.

1. Three assignments of error (4, 5, 6) are predicated upon the admission of evidence. It is charged that the District Court erred in permitting the witnesses Greer, Montony, and Chapman to give opinion testimony as to the value of the property.

The rule is settled that the decision of the trial court, with respect to whether a witness called to testify to any matter of opinion has such qualifications and knowledge as to make his testimony admissible is conclusive unless clearly shown to be erroneous in matter of law. Stillwell Mfg. Co. v. Phelps, 130 U.S. 520, 527, 9 S.Ct. 601, 32 L.Ed. 1035; Kovach v. United States, 53 F.(2d) 639 (C.C.A.6). The finding of the trial court on a question of fact, upon which the admissibility of evidence depends, will not be reversed on appeal, if the finding is fairly support-

R. R. Kramer and D. C. Webb, both of Knoxville, Tenn. (Barthell & Rundall, of Chicago, Ill., and Green, Webb, Bass & McCampbell, and Poore, Kramer & Tester-

ed by the evidence. Gila Valley, etc., Ry. Co. v. Hall, 232 U.S. 94, 103, 34 S.Ct. 229, 58 L.Ed. 521; Kovach v. United States, supra; Citizens' Bank & Trust Co. v. Allen, 43 F.(2d) 549, 551 (C.C.A.4). Cf. Spiller v. Atchison, Topeka & Santa Fe Ry. Co., 253 U.S. 117, 130, 40 S.Ct. 466, 471, 64 L.Ed. 810; Turner v. American Security & Trust Co., 213 U.S. 257, 261, 29 S.Ct. 420, 53 L.Ed. 788; Montana Ry. Co. v. Warren, 137 U.S. 348, 353, 11 S.Ct. 96, 34 L.Ed. 681.

In Clarke v. Hot Springs Electric Light & Power Co., 55 F.(2d) 612, 615 (C.C.A. 10), it was held that the competency of an expert is a preliminary question resting in the discretion of the trial court, and its decision in the absence of a plain error of law, serious mistake of fact, or abuse of discretion, will not be disturbed. Cf. District of Columbia v. Chessin, 61 App.D. C. 260, 61 F.(2d) 523; Gila Valley, etc., Ry. Co. v. Lyon, 203 U.S. 465, 474, 475, 27 S.Ct. 145, 51 L.Ed. 276; Chateaugay, etc., Co. v. Blake, 144 U.S. 476, 484, 12 S. Ct. 731, 36 L.Ed. 510.

The qualification of a witness to testify as to values of real or personal property is a preliminary question addressed to the discretion of the lower court; and the ruling of the trial judge will be sustained on appeal, unless manifestly erroneous. Union Trust Co. v. Woodrow Mfg. Co., 63 F.(2d) 602, 607 (C.C.A.8). The language quoted from 11 R.C.L. p. 638, § 56, in the last-cited case is pertinent to the question before us: "In regard to property value, the standard of qualification of the witness cannot usually be fixed very high. Not only are professional appraisers or dealers in the class of property in question competent as witnesses, but also others who have bought and sold similar property, or who know the prices paid therefor, even though that knowledge is based on secondary evidence, provided, of course, they are familiar with the property in question. Such witnesses are not, like experts, supposed to have science and skill superior to that of the jurors, but have a knowledge of the particular facts which the jurors have not."

In Montana Ry. Co. v. Warren, 137 U.S. 348, 353, 11 S.Ct. 96, 97, 34 L.Ed. 681, the Supreme Court, after pointing out that it has been held repeatedly that farmers living in the vicinity of a farm may testify as to its value, although without knowledge of sales of similar property, said: "If the rule were as stringent as contended, no value could be established in a community until there had been sales of the property in question, or similar property. After a witness has testified that he knows the property and its value, he may be called upon to state such value. The means and extent of his information, and therefore the worth of his opinion, may be developed at length on cross-examination. And it is fully open to the adverse party, if not satisfied with the values thus given, to call witnesses in the extent of whose knowledge and the weight of whose opinions it has confidence."

In Lebanon & Nashville Turnpike Co. v. Creveling, 159 Tenn. 147, 17 S.W.(2d) 22, 65 A.L.R. 440, the Supreme Court of the state in which the land here involved is situated held that, in passing upon the admissibility of evidence of value, more is left to the discretion of the trial court than in the determination of most other issues, so that an exception to the admission or exclusion of evidence in a land damage case will ordinarily not be sustained, except in case of manifest error.

Applying these principles to the admission of the opinion testimony which appellants denounce as error, we find, upon careful consideraton of the record, no abuse of discretion by the District Judge. In the instance of each of the three witnesses, qualifying experience and sufficient knowledge of the subject matter were shown to permit properly the expression of opinion as to the value of the property.

2. Three assignments of error (1, 2, 3) are laid to the exclusion of evidence by the trial court in refusing to permit the landowners to prove (a) the stumpage value of the timber standing upon the property; (b) the amount of standing timber as shown by a certain (Holt and Latham) cruise; and (c) the value of the property in the opinion of the witness Chambers.

(a) Did the court err in denying appellants the right to prove the stumpage value of the timber on the property?

The record shows that the most profitable use to which the property could be adapted was the sale and manufacture of its standing timber.

In condemnation cases, the most profitable use to which land can probably be put in the reasonably near future may be shown and considered as bearing upon its market value. McCandless v. United States, 298

U.S. 342, 345, 56 S.Ct. 764, 765, 80 L.Ed. 1205, decided May 18, 1936; Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236; Mississippi & R. R. Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206. But from this principle it does not follow that a landowner is privileged to prove separately the values of various uses to which the land is adapted, and to add the separate items of value to obtain the compensable value of the land taken by eminent domain.

We held in Devou v. City of Cincinnati, 162 F. 633 (C.C.A.6), that in a proceeding to condemn improved city property testimony as to the cost of the building thereon, or its value aside from the value of the land, by witnesses not qualified to testify as to the value of the land or the property as a whole, is inadmissible. The market value of the entire property being the issue on trial, we deemed it improper to value the building separately, because its value was necessarily affected by the value of the land, its location, surroundings, and the uses to which it could be put.

We consider the same reasoning applicable to the instant case. Here, the stumpage value of the timber is necessarily affected by the location, surroundings, and value of the land for other than timber usages.

Our opinion in the Devou Case, supra, conforms to the rule in Tennessee (within whose domain the land in litigation lies), as announced in Alloway v. Nashville, 88 Tenn. 510, 13 S.W. 123, 8 L.R.A. 123. The state Supreme Court commands a single view of all elements of value, and forbids their separate pricing. The charge of the trial court, in the following language, was approved:

"In determining the market cash value, you cannot single out from the elements of general value the value for an especial purpose, but you are to consider all the constituent elements that make up the market value—its availability, adaptability, and capacity for different uses and purposes.

"In determining the market cash value, everything which enhanced or depreciated its worth should be taken into consideration. If the existence of a rock quarry under the surface of the hill augmented or entered into the market value of the land, that fact should be considered; but the jury could make no separate allowance for the rock, for that would necessitate an inquiry into the cost of excavating and raising it. The cash market value of the land with the rock in it would be the proper consideration." 88 Tenn. 510, 516, 517, 13 S.W. 123, 124, 8 L.R.A. 123.

The Supreme Court of Tennessee not only upheld the foregoing charge, but sustained the action of the trial judge in excluding evidence of the particular value of the land as a reservoir site. The court declined to permit all the capabilities of the property to be priced separately and the aggregate to be calculated as the true value, "for they do not exist independently of each other, and cannot all be realized at the same time."

It seems appropriate to comment that, had we found error in the ruling of the District Judge in his refusal to receive testimony valuing the stumpage separately, we find no resultant prejudice to appellants; for the reason that the witness, Latham, was permitted to testify, in detail, concerning the quantity and quality of the various species of timber standing on the land. He was permitted, also, to express his opinion as to the fair and reasonable cash market value of the property as a whole. The jury heard him name the very high figure, $1,400,000. Certainly, this removed any prejudicial effect to the landowners from the denial of their proffer of separate valuation of the stumpage by the same witness. An erroneous ruling which relates to the substantial rights of a party is ground for reversal, unless it affirmatively appears from the whole record that it was not prejudicial. McCandless v. United States, supra; Williams v. Great Southern Lumber Co., 277 U.S. 19, 26, 48 S.Ct. 417, 419, 72 L.Ed. 761.

(b) Did the court err in refusing the proffered evidence of the Holt and Latham cruise of the standing timber?

This evidence was offered through the witness, Latham, who was engaged by Holt to estimate the timber on the property. Latham employed estimators to make a ten per cent. strip cruise. Over a period of two months, three to five crews of two men each worked under his direction. Latham stayed on the property during the full time the cruise was being made. He would go out each day with one of the men on a cruising expedition, and would leave him and go to another of the cruis-

ers. He checked among them; but made no estimates, himself, so far as the record reveals.

In estimating the quantity of timber in a tree, the estimator would call his estimate to the compass man who accompanied him, and the latter would enter the amount on a tally sheet. In the making of the records, Latham personally made no estimates of the quantity of timber in a tree; and, likewise, he made no tallies. He merely superintended the work of the crews.

The tally sheets were sent to Knoxville, where Holt and two other men computed the results. Latham testified that he checked them over. He says that "nobody checked each and every report, but every report was checked, every tally sheet."

Appellants sought to introduce in evidence a portion of the tally sheets and the calculations made from them by three different men. A copy of the summary of purportedly all of the tally sheets was offered. The court excluded the evidence.

Appellants insist that the evidence was competent under the rule which permits the introduction of book entries, based on data furnished by employees in the regular course of business, without the requirement of production of such employees as witnesses.

Heike v. United States, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450, Ann.Cas.1914C, 128, is cited as authority for their position. We think the case is not in point, for the reason that, while the books received in evidence contained entries by a set of weighers who were not called as witnesses, yet they had been checked by the company's tally men who testified and had been accepted by the company. The court said pointedly (227 U.S. 131, 145, 33 S.Ct. 226, 229, 57 L.Ed. 450, Ann.Cas.1914C, 128): "If other evidence than that of the men who made the entries was necessary, it was produced."

We think the evidence rejected by the trial court falls within no exception to the hearsay rule.

The tally sheets and the calculations therefrom were not entries made in the regular course of business. On the contrary, they were made apparently for exclusive use as evidence in this case.

██ An expert accountant will not be permitted to summarize private books of account, or documents, unless sufficient evidence is first introduced to furnish a proper basis for the admissibility of the books, or documents, themselves. Phillips v. United States, 201 F. 259, 269 (C.C.A.8); Ammerman v. United States, 267 F. 136 (C.C.A.8).

In Reincke v. United States, 278 F. 724 (C.C.A.8), the trial court, on a prosecution for larceny of interstate-shipment goods, admitted documents and papers, identified by a person in charge of the shipping department of the consignor as made in regular course of business under his general supervision. The superintendent did not see the work done, or the entries made. The absence of the employee who made the record was unexplained, except by statement of counsel that he could not be found. The admission of the evidence was held erroneous, and the case was reversed and remanded. Cf., from same circuit: Hagan Coal Mines v. New State Coal Co. (C.C.A.) 30 F.(2d) 92; Beck v. United States (C.C.A.) 33 F.(2d) 107, 113.

The action of the District Court, in refusing to admit the evidence tendered to show the results of the Holt and Latham cruise, is approved.

██ (c) The assignment of error to the refusal of the court to permit the witness Chambers to express an opinion as to the value of the property may be brushed aside. The witness disqualified himself. Upon cross-examination, out of the presence of the jury, he admitted: "I don't expect that I saw more than a third of this land. I wouldn't undertake to appraise a farm for the Federal Land Bank where I had only seen a third of it. I was trying to get the idea of it as a general thing. * * * I think I saw the poorest part of this tract. I am rather guessing at that. * * * In a way my testimony would be just a guess."

The court properly refused to permit the witness to guess the value of the land. The rules of evidence do not permit courts to conduct guessing contests.

██ 3. Appellants contend that they are entitled to a new trial, because prejudiced by the repeated efforts of government attorneys to show, on cross-examination, that the witnesses Latham and Murphy had testified in other condemnation suits involving property acquired for the Great Smoky Mountain Park; and that awards had been made by juries, or compromise

settlements obtained by the Park Commission, for amounts materially less than these witnesses had testified to be the value of the properties involved in such suits.

It is conceded that all evidence of the kind complained of was properly and repeatedly excluded by the trial judge; but it is insisted that the misconduct of the government attorneys had the effect of placing incompetent testimony before the jury, and constitutes reversible error.

We do not find that the conduct of the government attorneys falls within the ban of Pierce v. United States, 86 F.(2d) 949 (C.C.A.6), or Pharr v. United States, 48 F.(2d) 767 (C.C.A.6). The transgressions of counsel were ·slight; the court ruled correctly and promptly; repetitions were not extensive; and we find no basis for saying that the jury were prejudiced. Cf. Volkmor v. United States, 13 F.(2d) 594 (C.C.A.6); Frantz v. United States, 62 F.(2d) 737 (C.C.A.6).

■ An error must be deemed harmless, if upon examination of the entire record substantial prejudice to the complainant does not appear. Haywood v. United States, 268 F. 795, 798 (C.C.A.7); Rich v. United States, 271 F. 566, 569, 570 (C.C.A.8).

■ Furthermore, we think the point was waived by failure of the appellants to move for a mistrial. Carter v. Tennessee (C.C.A.) 18 F.(2d) 850, 853.

■ 4. Three assignments of error (8, 9, 10) are based upon alleged gross inadequacy of the jury verdict. The jury awarded $483,500 as just compensation for the taking of the land. The government contended that the tract contained 24,717 acres; the landowners insisted that 25,600 was the correct acreage. Six expert witnesses on each side of the controversy testified upon the issue of value.

The estimated valuation placed by the government witnesses on the property ranged from $300,000 to $467,874. The witnesses introduced by the landowners estimated the value of the property in varying amounts from $1,000,000 to $1,400,000. Four of the five members of the jury of view had voted for an award of $800,000; while a minority juror, in a separate report, stated his conclusion that $550,000 would be correct.

In overruling the motion for a new trial, the District Judge said: "There was a very wide difference between the contention of the condemnor and the owners as to fair cash market value of the involved lands. I would have sustained a verdict for a larger recovery, but I cannot say that one would have been set aside as grossly inadequate for a smaller amount. The land is commercially valuable chiefly as a lumbering proposition, and the large estimates placed upon its value were the result of computations involving many elements difficult of accurate estimation. The result, therefore, was speculative. While in many instances the witnesses answered directly that the value fixed by them was the fair cash market value, yet this evidence, considered as a whole, clearly shows that the value was arrived at by setting up all of the estimated costs that would enter into the manufacture of the lumber over a long period of time, and subtracting that amount from estimates of the realization therefrom, and in that manner arriving at the cash market value, or estimating it from that basis. Such values cannot be accepted as more than elements to be considered in arriving at market value of the land."

We think the District Court applied the true principles.

In Olson v. United States, 292 U.S. 246, 257, 54 S.Ct. 704, 709, 78 L.Ed. 1236, the Supreme Court said: "In respect of each item of property, that value may be deemed to be the sum which, considering all the circumstances, could have been obtained for it; that is, the amount that in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy. In making that estimate there should be taken into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining. Brooks-Scanlon Corporation v. United States, 265 U.S. 106, 124, 44 S.Ct. 471, 68 L.Ed. 934. The determination is to be made in the light of all facts affecting the market value that are shown by the evidence taken in connection with those of such general notoriety as not to require proof. Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascer-

tainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth. Cf. Minnesota Rate Cases, 230 U.S. 352, 452, 33 S.Ct. 729 [57 L.Ed. 1511, 48 L.R.A.(N.S.) 1151, Ann.Cas.1916A, 18]; Smith v. Illinois Bell Tel. Co., 282 U.S. 133, 152, 51 S.Ct. 65, 75 L.Ed. 255; Los Angeles Gas Corporation v. Railroad Comm., 289 U.S. 287, 319, 53 S.Ct. 637, 77 L.Ed. 1180."

Compensation is to be estimated by reference to uses for which the property is suitable, having regard to the existing business and wants of the community, or such as may be reasonably expected in the immediate future. Mere possible or imaginary uses or the speculative schemes of its proprietor are to be excluded. Chicago, Burlington & Quincy, Ry. Co. v. Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979; Mississippi & R. R. Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206.

The value should be fixed as of the date of the proceeding and with reference to the loss the owner sustains, considering the property in its condition and situation at the time it is taken and not as enhanced by the purpose for which it was taken. United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 76, 33 S.Ct. 667, 57 L.Ed. 1063; Kerr v. South Park Com'rs, 117 U.S. 379, 387, 6 S.Ct. 801, 29 L.Ed. 924; Shoemaker v. United States, 147 U.S. 282, 304, 305, 13 S. Ct. 361, 37 L.Ed. 170.

The Supreme Court of Tennessee has thus stated the law for guidance in land condemnation cases in that state:

"The general rule laid down in the leading case of Woodfolk v. Nashville & C. R. Co., 2 Swan [422] 427, for determining the measure of just compensation in condemnation cases, ever since followed in this state (see Alloway v. Nashville, 88 Tenn. [510] 516, 13 S.W. 123, 8 L.R.A. 123; McKinney v. Nashville, 102 Tenn. 131, 52 S.W. 781, 73 Am.St.Rep. 859; Lewisburg & N. R. R. Co. v. Hinds, 134 Tenn. [293] 312, 183 S.W. 985, L.R.A.1916E, 420; and others), is approved, this general rule, being concisely stated in the recent case of Kentucky-Tennessee Light & Power Co. v. Beard, 152 Tenn. [348] 354, 277 S.W. [889], 890, quoting from Woodfolk v. Nashville & C. Railroad Co., supra, as follows:

" 'We consider the proper rule to be this, that the fair cash value of the land taken for public use, if the owner were willing to sell, and the Company desired to buy that particular quantity, at that place and in that form, would be the measure of compensation.'

"This is a sound statement of the rule for arriving at the 'market value'—the descriptive term commonly employed in defining the basis for condemnation awards. And here it may be well to quote a pertinent paragraph from Lewisburg & N. R. R. Co. v. Hinds, supra, as follows:

" 'The principle on which it acts is that the owner of the land shall be treated as one offering it for sale at a fair price, while not being under any stress of circumstances that would induce him to sacrifice his property, and the condemnor as an intending buyer, who is alike free from stress, as not being forced to buy.' " Lebanon & Nashville Turnpike Co. v. Creveling, 159 Tenn. 147, 156, 17 S.W.(2d) 22, 24, 65 A.L.R. 440.

In Tate v. Baugh, 264 F. 892, 894 (C. C.A.6), this court said: "There is a sharp conflict in the evidence upon material issues of fact. The jury found from this evidence for the defendant. Under the provisions of section 1672, Comp.Stat.1916 (R.S. § 1011 [28 U.S.C.A. § 879]), this court has no authority to disturb the finding of the jury upon a question of fact, if there is any evidence to sustain that verdict."

An appellate court will rarely enter upon a consideration of conflicting evidence of value, to determine whether a verdict for damage to property is excessive. St. Louis, I. M. & Southern Ry. Co. v. Reed, 216 F. 741 (C.C.A.8); Chicago & N. W. Ry. Co. v. O'Brien, 153 F. 511 (C. C.A.8).

Correspondingly, a new trial will not be awarded by a Court of Appeals for inadequacy of the verdict, unless it appears that the refusal of the trial judge to grant the motion for a new trial was a plain abuse of his discretion. Pugh v. Bluff City Excursion Co., 177 F. 399, 401 (C.C. A.6).

Despite their contention, the last-cited decision of this court does not support the position of appellants. The case presented an action brought by a widow for the death of her son, in which the jury found a verdict for damages in the amount of $1. It was held that a new trial should have been granted, because on its face the

verdict was inconsistent, and showed an abuse of power on the part of the jury.

We said: "The jury found the plaintiff was entitled to recover. And if she was, it was absurd to say that she was entitled to only nominal damages. The conclusion seems unavoidable that the verdict was simply a compromise to prevent a disagreement. Its effect was to cut off the plaintiff from her privilege of having another trial if the jury were unable to agree upon the question of her right to recover. And upon the new trial to which she was entitled, she might be able to satisfy the jury that she was entitled to recover upon the merits of the action and have substantial damages."

The two cases cited from the Eighth Circuit do not establish the contention of appellants, for the reason that, in each, the undisputed evidence showed that the plaintiff was entitled to recover a substantially larger amount than the jury awarded; and it was held that the trial judge abused his discretion in refusing a new trial. United Press Ass'ns v. Nat'l Newspapers Ass'n, 254 F. 284 (C.C.A.8); Glenwood Irrigation Co. v. Vallery, 248 F. 483 (C.C.A.8). Nor is Cobb v. Lepisto, 6 F. (2d) 128 (C.C.A.9), in point in behalf of appellants, because there the personal services of an interpreter were so manifestly overvalued by the jury as to call for corrective action by the court.

■ In the instant case, as has been shown, there was a vast conflict in the testimony of the witnesses to the value of the land taken. On full review of the evidence, we find no abuse of discretion on the part of the trial judge in refusing a new trial.

■ Appellants urge further that the District Judge expressed dissatisfaction with the verdict, and that it became his duty to set it aside. They contend that he should have followed the rule established in the state court, to the effect that the trial judge is a thirteenth juror and, if dissatisfied with the verdict of the jury, should set it aside; and, if he fails to do so, will be reversed on appeal. Vaulx v. Tennessee Central Ry. Co., 120 Tenn. 316, 108 S.W. 1142.

But this rule does not prevail in the United States Courts, as we have previously pointed out. The trial judge will be reversed only for an abuse of discretion. Pugh v. Bluff City Excursion Co., supra.

■ Moreover, we do not regard the comment of the trial judge in overruling the motion for a new trial as indicative of such dissatisfaction with the verdict, as would even under a fair application of the Tennessee rule warrant reversal: "I would have sustained a verdict for a larger recovery, but I cannot say that one would have been set aside as grossly inadequate for a smaller amount." Holding such balanced opinion, he properly let the verdict of the jury stand.

5. Appellants assert that the trial court erred in refusing to grant a new trial upon newly discovered evidence, tendered with supporting affidavits. These affidavits merely attack the credibility of the witnesses Chapman and Ownby.

Impeachment of Chapman was sought by the production of a letter he wrote on December 11, 1931, in which he stated that he did not claim to be a judge of land values and was compelled to rely upon the opinion of others. Ownby was assailed with respect to an alleged misstatement in his testimony, to the effect that certain property was covered with virgin timber. The alleged newly discovered evidence related solely to the weight to be given the testimony of two witnesses to values. The subject matter was cumulative.

■ Granting or refusing a new trial upon newly discovered evidence of a contradictory and impeaching character rests in the sound discretion of the trial court. Chambers v. Anderson, 58 F.(2d) 151 (C. C.A.6); Salmon Falls Mfg. Co. v. Midland Tire & Rubber Co., 285 F. 214 (C.C.A.6); Glenberg v. United States, 281 F. 816 (C. C.A.6).

In Tate v. Baugh, 264 F. 892 (C.C.A. 6), we found no abuse of discretion in the refusal of the trial judge to grant a new trial on the ground of newly discovered evidence; and, in Hale v. United States, 67 F.(2d) 673, 674, we pointed out that it should "be noted that the character of the newly discovered evidence was cumulative."

The Court of Appeals for the Fifth Circuit cited with approval Chambers v. Anderson, supra, and said: "The assignments on the refusal to grant a new trial for newly discovered evidence must also be overruled. The record shows that the court took oral testimony on the hearing of this motion; that he heard the witnesses

at length, and fully informed himself of the nature and effect of the offered proof and the circumstances of its offer. It was for the trial judge to say, in the exercise of an informed discretion, whether the proof made out a case for granting the new trial. It was for him to say whether sufficient diligence had been shown, whether the proffered testimony was more than merely cumulative, whether and to what extent it was material, and the probable effect it would have in changing the result on another trial. In the absence of a clear showing of abuse of discretion, his action stands." Royal Insurance Co. v. Eastham, 71 F.(2d) 385, 389 (C.C.A.5). Cf. Wulfsohn v. Russo-Asiatic Bank, 11 F.(2d) 715 (C.C.A.9); Smith v. St. Louis, I. M. & Southern Ry. Co., 214 F. 737 (C.C.A.6).

■ Newly discovered evidence which tends merely to affect the weight and credibility of evidence does not constitute proper basis for a new trial. Miller v. Commonwealth of Kentucky, 40 F.(2d) 820, 822 (C.C.A.6).

We find no abuse of discretion by the trial judge in denying a new trial on the newly discovered evidence offered.

We are of opinion that the record shows that in his rulings on the admissibility of evidence and in his charge to the jury (to which no exception was taken) the District Judge took cognizance of the foregoing authorities, and followed them.

6. The only remaining question is: From what date should interest be allowed on the amount awarded the landowners?

The District Judge allowed interest from the date of the entry of judgment, which was six months and twelve days subsequent to the verdict of the jury, reported on August 6, 1935.

■ We think interest should not be allowed, as claimed by appellants, from the time of the filing of the condemnation petition; because no declaration of taking was filed simultaneously, nor did the United States take actual possession of the land at such time. In a condemnation proceeding, the landowner is entitled, as part of his just compensation, to interest on the confirmed award from the time when the government took actual possession. United States v. Rogers, 255 U.S. 163, 169, 41 S. Ct. 281, 282, 65 L.Ed. 566; Seaboard Airline Ry. Co. v. United States, 261 U.S. 299, 305, 43 S.Ct. 354, 356, 67 L.Ed. 664.

In a suit under the Tucker Act (28 U. S.C.A. § 41 (20) in which its previous decisions were reviewed, the Supreme Court allowed interest from the time of the taking of private property for public use, so as to preserve the constitutional guarantee of "just compensation" provided in the Fifth Amendment. Jacobs v. United States, 290 U.S. 13, 16, 17, 54 S. Ct. 26, 27, 28, 78 L.Ed. 142, 96 A.L.R. 1.

The Chief Justice quoted approvingly from Seaboard Airline Ry. Co. v. United States, supra: "No specific command to include interest is necessary when interest or its equivalent is a part of such compensation."

United States v. North American Transportation & Trading Co., 253 U.S. 330, 40 S.Ct. 518, 64 L.Ed. 935, relied upon by government counsel, is not applicable; for it was not a condemnation case and, as pointed out in Seaboard Airline Ry. Co. v. United States, supra, the opinion "suggested, without so deciding, that in the case of condemnation of land, interest might be collected, even in the absence of state enactments allowing it adopted by the conformity provisions."

■ Payment of the damages to the owner of the land and the vesting of title in the United States are to be contemporaneous. Bauman v. Ross, 167 U.S. 548, 598, 17 S.Ct. 966, 42 L.Ed. 270.

Should interest be allowed from the date of the entry of the judgment on the verdict of the jury, or from the date of the verdict, itself?

■ The settled Tennessee rule is that, in a land condemnation case, a nonsuit cannot be taken after the case has been submitted to the jury and they have retired to consider their verdict. Cunningham v. Memphis Railroad Terminal Co., 126 Tenn. 343, 356, 149 S.W. 103, Ann.Cas.1913E, 1058.

The government becomes appropriator of the land, entitled to immediate possession, from the time it is precluded from withdrawing its condemnation petition, just as if it had taken actual possession. It follows that interest should be awarded from such date. Under the principles which we have discussed, we see no fair reason why interest should be postponed to the date of entry of the judgment.

Accordingly, the judgment entered in the District Court on February 18, 1936, is affirmed, with the modification that the judgment be amended so as to provide for the allowance of interest on $483,500 from August 6, 1935.