THE PEOPLE OF PUERTO RICO, ETC., Plaintiff, Appellant and Appellee, *v.* HEIRS OF DOÑA VIOLANTE RABELL CABRERO ET AL., Defendants, Appellees and Appellants.

No. 10275. Argued February 6, 1951.—Decided May 29, 1951.

*Víctor Gutiérrez Franqui, Attorney General, (Vicente Géigel Polanco, Former Attorney General,* on the brief), and *José Antonio Luiña, Assistant Attorney General,* for appellant-appellee. *José Luis Cancio* for appellees-appellants.

MR. ACTING CHIEF JUSTICE TODD, JR., delivered the opinion of the Court.

As is the rule in most condemnation cases the only question involved here is the value of the condemned property. The People of Puerto Rico, represented by the Chairman of the Public Recreation and Park Commission,[1] brought the present action against the Heirs of Violante Rabell Cabrero for the purpose of expropriating a parcel of land of 5.4081 cuerdas, which had been segregated from a property of 305.74 cuerdas, located in the Bahomaney Ward of San Sebastián, in order to construct an athletic field in said town. It deposited the amount of $3,785.67 as the fair value of said parcel and

---

[1] See § 4 of Act No. 4 of June 30, 1947 (Fourth and Fifth Spec. Sess. Laws, p. 6).

having filed a Declaration of Taking and Delivery, it was invested with title thereto.

Upon answering the complaint the defendants denied that the fair market value of the parcel taken was the sum deposited and on the contrary alleged that its value was $25,000 and, moreover, that damages had been caused to the main property in an additional sum of $25,000 by reason of the segregation. At the beginning of the trial, however, the defendants amended their answer and limited their claim thus: the 5.4081 cuerdas at $2,000 per cuerda, $10,816; depreciation of four cuerdas of the remainder, at $1,000 per cuerda, $4,000; and damages to the remainder of the property because of the expense which would have to be incurred for drainage, $3,380, that is, a total of $18,196.

The case was heard and the Court of Eminent Domain entered judgment in which it determined that the fair market value of the condemned parcel was $1,100 per cuerda, that is, $5,948.91, and that since damages amounting to $512.50 had been caused in .55 of a cuerda in the remainder of the property, the total amount to be paid to the defendants was $6,461.41. Since they had received $3,785.67, it ordered the plaintiff to deposit the difference, namely, $2,675.74, plus interest at 6 per cent per annum from the day of the original deposit.[2]

Feeling aggrieved by the judgment both parties appealed.

■■ The defendants assign nine errors. Most of them challenge, one way or another, the weighing of the evidence by the Court of Eminent Domain to determine the value of the parcel taken and the depreciation of the main property due to the segregation.

The evidence was conflicting. That for the defendants tended to show that the market value of the parcel, for agri-

---

[2] "On May 17, 1949 the Court of Eminent Domain modified *nunc pro tunc* its judgment of the 10th of that same month and stated that by virtue of the stipulation submitted by the parties it ordered the plaintiff to pay, besides the amount indicated in its judgment, the sum of $162.24."

cultural purposes, was $1,600 a cuerda, and that due to its location near the town of San Sebastián it could also be used for urbanization purposes, having then a value of $2,000 per cuerda.

The lower court believed plaintiff's evidence, corroborated in part by the testimony of Antonio Sagardía, defendants' witness, that for agricultural purposes the value per cuerda was $700 but at the same time it believed defendants' evidence to the effect that the best potential use of the parcel could be for urbanizing purposes which would increase its value by $400 per cuerda and concluded that the fair market value was $1,100 a cuerda. It should be noted here that the first of the two errors assigned by the plaintiff in his appeal challenges this conclusion, maintaining that the court *a quo* erred in taking into consideration the $400 increase per cuerda as the possible use of the parcel for urbanization purposes.

As to the errors assigned by the defendants, the lower court resolved the conflict in the evidence. It gave credence, in part, to plaintiff's witnesses as well as to one of defendants' witnesses and, in so doing, we do not think that it committed manifest error. Nor did it commit the error assigned by the plaintiff, inasmuch as the market value of the property must not be determined merely upon the use to which it has been devoted as the only factor, but the highest and most profitable use for which the property is adaptable in the reasonably near future is to be considered. *People* v. *García*, 66 P.R.R. 478, 483; *People* v. *Huyke*, 70 P.R.R. 720, 723; *United States* v. *Causby*, 328 U. S. 256, 261; *U. S. ex rel. T.V.A.* v. *Powelson*, 319 U. S. 266, 275. We do not interpret the conclusion of the court in the same sense plaintiff does, to the effect that it determined two market values for the parcel and added them. Rather it considered the different uses to which it could be dedicated and believing the evidence for both parties, it determined that the market value per cuerda for urbanizing purposes was $1,100. If the court

had done as charged by the plaintiff it would have added said value of $1,100 for urbanization to the $700 for agricultural purposes and the result would have been $1,800 per cuerda. That is just what can not be done according to the decisions cited by the appellant. *Morton Butler Timber Co.* v. *United States*, 91 F. 2d 884; *Metropolitan Water Dist.* v. *Adams*, 116 P. 2d 7.

As to the depreciation of defendants' main property by reason of the segregation of the condemned parcel, the defendants claim that the trial court erred in limiting the damages to $512.50 in .55 of a cuerda on the northern part of the main property when the evidence showed that two cuerdas on the North and two on the South had suffered damages. With regard to this phase the court accepted and believed Samuel Gracia, defendants' own expert, who testified that the part which depreciated in the main property had been those .55 of a cuerda on the North and that the damages toward the South were insignificant. It is true that Antonio Sagardía and Mario Oronoz, defendants' witnesses, testified that the depreciation of the main property covered two cuerdas to the North and two cuerdas to the South; however, the court was not bound to accept the testimony of witnesses more favorable to the defendants if another of their witnesses testified the contrary.

The other error assigned by the plaintiff in his appeal also challenges the award of the $512.50 but, of course, on different grounds.

The lower court, in awarding this sum, stated:

". . . We consider that the main property has been damaged in an area of .55 of a cuerda, lying between the fence erected on the northern part of the parcel taken and the brook running from East to West on the northern part of said parcel. This piece of land has now an irregular shape, long and narrow, a strip of land. The bleachers in the athletic field are located on that same side and it is only natural that it be subject to the incidents brought about always by the agglomeration of a large

number of people in a similar place. It is logical that a voluntary purchaser take into account these considerations in connection with the price to be paid for said property.

"The court having decided that the value of these lands on the date of acquisition was ELEVEN HUNDRED DOLLARS ($1,100) per cuerda, the aforesaid .55 were worth $605 prior to the taking, and it having been proved that later they were worth $82.50, the defendants have suffered severance damages amounting to the sum of FIVE HUNDRED AND TWELVE DOLLARS AND FIFTY CENTS ($512.50)."

Plaintiff-appellant admits that the award for severance damages because of the present irregular shape, long and narrow, of the .55 of a cuerda, is proper and correct, but because they were speculative to the agricultural business of the defendants, damages should not have been granted for the incidents which the agglomeration of people in the athletic field to be constructed in the condemned parcel might occasion. It argues then that since the damages in either concept have not been determined, the case should be remanded to the lower court in order that it award only the proper amount because of the present irregular form of the parcel of .55 of a cuerda.

From our examination of the evidence herein we are convinced that the conclusion reached by the court a quo is correct. Even though we accepted, without deciding, that it erred in not setting forth separately the amount of the severance damages in the parcel of .55 of a cuerda, we consider that the evidence showed that said parcel, because it is a strip of irregular and narrow shape, might be considered useless for agricultural purposes as well as for its possible use as an urbanization, not only due to its shape but also because of its location next to the athletic field. This does not constitute damages to the agricultural business of the defendants, or speculative damages, but rather a real and actual decrease in the market value of that parcel for any of those purposes.

■ Another error assigned by the defendants refers to the fact that the court *a quo* did not award damages for the necessary investment to construct a new sewer in order to avert, in the remainder of the property not taken, flooding and the wearing away of land as a consequence of the works performed by the plaintiff in the condemned parcel. Again, with respect to this particular, the evidence was contradictory and the court, which also made a view, believed the testimony of Arturo J. Rodríguez, plaintiff's witness, expert engineer, to the effect that the works performed did not affect the course of the rain water which ran in the same manner and direction as prior to the taking of the parcel of five cuerdas.

■ Finally, the appellants contend that the court erred in not admitting in evidence a letter from the Commissioner of the Interior fixing the value of other properties of the defendants similar to the condemned property in order to purchase them for the People of Puerto Rico. That evidence was clearly inadmissible. *People* v. *Carmona*, 70 P.R.R. 292, 295. This error was not committed, nor that charged to the court in not having given any value at all to defendants' evidence with respect to sales in the market of lands similar to the expropriated property inasmuch as the court arrived at the conclusion that said lands, because of their area, topography, and situation, were not similar to the property taken, and with respect to one of them, whose area of 4½ cuerdas was near to that of the condemned parcel and which was purchased by Flor Quiles Bonilla, the evidence showed that due to the fact that a property of his where he had his business had been condemned, he was compelled to make that purchase. The court concluded, correctly we think, that the attendant circumstances in said sale did not give it the voluntary character necessary to take it as a basis to fix the value of the parcel expropriated here.

■ We think that the questions involved in these appeals mainly refer to the weighing of the evidence by the Court of Eminent Domain as to the market value of the condemned

parcel and to the depreciation of the main property.   We have examined the evidence and we consider that said court did not commit manifest error in its appreciation.

The judgment will be affirmed.

Mr. Justice Negrón Fernández took no part in the decision of this case.